15450

MOYLE v. MUTUAL LIFE INSURANCE COMPANY OF N. Y.

(21 S. E. (2d), 561)

*Messrs. Thomas, Cain & Black,* of Columbia, counsel for appellant, with *Mr. Louis W. Dawson,* of New York City, of counsel,

*Mr. Roger M. Heyward, Mr. Paul A. Cooper,* and *Mr. D. McK. Winter,* all of Columbia, counsel for respondent,

Counsel for appellant, in reply,

August 11, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER, with MR. ASSOCIATE JUSTICE STUKES dissenting:

In 1924, the appellant issued to the respondent three insurance policies containing total and permanent disability provisions. As hereinafter more fully set forth, the appellant paid to the respondent total and permanent disability benefits, and waived future premiums, in accordance with the provisions of the policies, for a period of years until April, 1940, when the appellant discontinued making payments and notified the respondent that it would no longer accord the waiver of premiums.

Separate suits were brought on the three policies, but by agreement the cases were tried together. After the rejection of motions by the appellant for a nonsuit and for a direction of verdict, the case was submitted to the jury, resulting in a verdict for the respondent for the amount of benefits claimed and of the premiums paid on the policies by the respondent after April, 1940, with interest on such sums. Judgment having been entered on the verdict, this appeal followed.

The respondent is forty-seven years old. When he was a small child he lost his right hand at the wrist. This of course was known to appellant when in 1924 it issued the policies now in question. In the early part of 1933 respondent sustained injuries to his left hand. Following such injuries, he made claim upon the appellant for the total and permanent disability benefits provided in his policies, these consisting of certain sums to be paid each month, and of the waiver of premiums during the continuance of the disability. The claim was approved, and until April, 1940, the appellant paid to the respondent the disability benefits provided

by the policies, and also extended to him the benefit of the premiums waiver therein provided.

On or about April 1, 1940, the appellant notified the respondent that it would no longer make the disability payments, and would discontinue its waiver of the payment of premiums.

In his complaints the respondent alleges, without further describing his condition, that on or about February 15, 1933, within the stated provisions of the policies in question, he "received bodily injury from which he became totally and permanently disabled under the laws of the State of South Carolina." As a further ground of recovery he alleges: "VII. That during the time the plaintiff was receiving the total and permanent disability benefits under said contract as hereinabove referred to, the defendant on numerous occasions withheld the monthly payments when due without explanation, notice or reason, and constantly and almost continuously had its agents or investigators questioning plaintiff's friends and neighbors as to plaintiff's activities, living habits, family relations and personal habits and that same together with numerous and frequent conferences with accredited representatives of defendant company so harrassed and upset plaintiff that it caused his nervous system to become upset, wrecked and permanently impaired, as a result of which plaintiff has further become totally and permanently disabled within the terms and meaning of said contract."

And the testimony was directed to both of such asserted grounds of recovery.

The appellant admitted the issuance of the policies in question, relying upon the policies themselves for the language of the total and permanent disability benefits expressed therein, and admitted that it paid such benefits and accorded the respondent the stipulated waiver of premiums until April 1, 1940, but it denied that the respondent has been totally and permanently disabled after such date. It

also denied the allegations of Paragraph VII of the complaints as above quoted.

For all practical purposes it may be said that the exceptions of the appellant raise the single question whether the respondent is totally and permanently disabled within the following provision of the policies: " *   *   *   that he has become totally and permanently disabled by bodily injury or disease, so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation   *   *   *."

In the early months of 1933, prior to the accident which resulted in the physical impairments upon which the respondent relies, the respondent was employed by Liggett & Myers Tobacco Company, which is one of the larger concerns engaged in the manufacture of cigarettes and other tobacco products. In varying capacities he had been so employed beginning in 1918. He worked himself up to successively higher positions and in 1919 he was sent by his employers to Columbia, being then transferred to the sales department. He worked as a retail salesman, calling on the trade all over the State, contacting consumers, arranging window displays, tacking up signs, etc., until May, 1923, when he was promoted to division manager in South Carolina in the cigarette department. In that capacity he supervised all of the salesmen in South Carolina, of whom the number varied between ten and eighteen. His work required him to travel about 30,000 miles a year, and although he had only one hand, he travelled by automobie, doing his own driving.

Respondent's work as division manager was described by him in part as follows: "*   *   *   That involved driving, the use of an automobile, travel, being away from home all the time, carrying a typewriter, using a typewriter a great deal too and numbers of things that would ordinarily fall to the lot of a man in charge of other men in performing

work of that kind. I had to teach these men how to put in window displays, how to put up advertising material, how to sell tobacco products, what the tobacco products contained, how they were manufactured, how they were distributed throughout the retail and the wholesale business. I had to do all that and supervise that work. * * *"

To indicate the specialized training involved in respondent's work, testimony was adduced to show that respondent's job required him to know a good deal about tobaccos and manufacturing processes. Respondent testified on this subject: "I think Liggett & Myers alone had some 40 brands of cigarettes and we had to learn those and the other companies' brands, too. We had to study those brands and we had to be in position to compare them. That is the work I referred to when I said consumers' work. We had to call on a consumer and show the cigarette and show the difference in the various brands of cigarettes."

In the early part of 1933, prior to respondent's accident, he was receiving a salary of $4,000.00 a year. He had also received a bonus each year, the average amount of which was about $600.00. There is testimony in the record indicating that in the spring of 1933, before the accident, respondent's employers either temporarily or permanently terminated the employment of the respondent because of the depressed business conditions then prevailing, but since the respondent's claim involved in the present appeal does not embrace the period intervening between the date of his suspension or discharge and the date of the accident, we do not deem such testimony material in the determination of the questions presented by the record.

In May or June, 1933, the respondent fell into a ripsaw, with the result that his left hand became mutilated. Describing the condition of the respondent as far as his hands are concerned, following the injury to the left hand, Dr. Frank Owens testified for respondent as follows: "Mr. Moyle has the entire loss of his right hand and part of his

arm at about the beginning of the fist—a third of his arm, and he wears an artificial hand which is of no value except the looks of it and he also received an injury to his left hand in which he lost the third phalanges joint of the little finger, and a portion of the tarsal joint of the little finger, and he received some kind of injury to the next finger, probably a nerve injury which resulted in the contraction of the finger down into the palm of the hand and that injury has stiffened that finger and it is of no use and gets in the way of the use of the hand."

There is testimony to the effect that as the result of the injury to his left hand respondent could not thereafter drive an automobile or obtain a license to drive one; that he was unable to operate a typewriter as he had previously done, or to handle packages of tobacco and make window displays as he had formerly done, or effectively demonstrate to salesmen employed by him how the various duties of a salesman, including the handling of the tobacco products and of the making of displays and the placing of advertising, should be carried on.

In September following the accident respondent entered the law school of the University of South Carolina. He continued his studies there for two and one-half years and then went to Duke University Law School, where he received the degrees of Bachelor of Laws and Master of Laws. Four years were consumed in this college work, respondent returning to Columbia in 1937.

Upon his return to Columbia respondent immediately became active in the work of the various welfare agencies of the city, assisting them in their campaigns to raise funds and otherwise. His activities covered a broad field, but he received no compensation at first for his services. He testified that he went into this work so as to have something to do to occupy his time. Since the date of his accident and until March, 1940, he had not engaged in any remunerative occupation work.

Among the agencies thus served by respondent was the Columbia Community Chest. Prior to 1939 the Community Chest had brought in an outsider each year to handle its campaign to raise money and paid about twenty-five hundred dollars for this service. In the 1939 campaign the respondent was made co-chairman of the Community Chest campaign fund, but he did not receive any salary in that capacity. In March, 1940, the respondent was elected executive director of the Columbia Community Chest as a paid officer, at a salary of $250.00 per month for a while, and at the time of the trial of the present case, fourteen months after his election, he was receiving $300.00 per month. Since 1938 the Community Chest has not employed an outsider to handle its campaigns.

The record discloses that the services of the respondent to the Columbia Community Chest have been eminently satisfactory. The campaigns of the Community Chest result in raising each year sums ranging from $70,000.00 to $100,000.00. These sums are apportioned among the various charitable agencies in the City of Columbia, such as the Salvation Army, the Y. M. C. A., the Y. W. C. A., the Door of Hope, Crippled Children's Society, Society for the Blind, Society of Mental Hygeine, "and many others."

The Community Chest has its own board of directors, under whom the respondent performs his duties and to whom he reports. The allocation of the funds to the various agencies in Columbia is based upon their respective budgets, and upon their reports of activities, which are furnished to the respondent as executive director. The allocation of the funds is made in the judgment of the board of the Community Chest as to the value of the services of each of the constituent organizations to the City of Columbia in the field of welfare work, and their comparative needs. Budgets and reports are passed on by the respondent to the board of the Community Chest with his comments.

The duties of executive director do not involve any control over the constituent agencies, but because of the de-

pendence of the latter upon the Community Chest for their operating funds, there is a close association between them and the Community Chest, involving frequent contacts of the respondent with those agencies during the course of each year.

In addition to performing the services of executive director of the Community Chest, the respondent has continued his interest in and activities on behalf of other welfare organizations, though apparently without compensation. In addition, at the time of the trial, the respondent was city director of the United Service Organizations for the City of Columbia. While the record does not so state, presumably the respondent receives no compensation for such services.

These, in broad outline, are the facts upon which we must determine the applicability of the policy provisions upon which the respondent relies for the recovery of disability benefits and the return of premiums paid by him.

Dr. Owens testified that he examined the respondent a few days before the trial and that "his heart and his lungs and kidneys showed up very good indeed"; but that he seemed to be extremely nervous. He expressed the opinion that this nervousness was due to respondent thinking about the injury to his hands, and that if respondent continues in his present work it will be injurious to him, and might later lead him into a nervous collapse. This particular testimony does not in our opinion weigh in favor of recovery by the respondent. Admittedly the policies of insurance in question are in full force and effect as to all of their provisions and a ruling on the present appeal that the respondent is not entitled to recover in the present action would not preclude him from immediately reasserting his claim to disability benefits in the event that he found it impossible to continue holding the job in which he is now making $3,600.00 per year. It is to be observed that in spite of the opinion of Dr. Owens, the respondent has taken on arduous tasks in addition to those for which he is compensated, and that if it be

true that the aggregate of the work done by the respondent at the time of Dr. Owens' examination was in the opinion of Dr. Owens beyond his capacity, or injurious to his health, there is nothing in the record to show the relative amount of work involved in respondent's paid job as director of the Columbia Community Chest and in his various additional activities at that time.

It is no reflection on Dr. Owens to counter his expressed opinion with the familiar judicial dictum that a medical opinion which conflicts with the physical facts will not be permitted to control the determination of a factual controversy.

Another physician, who testified on behalf of the appellant, expressing the opinion that the work done by the respondent is probably beneficial rather than injurious to him, admitted that in 1939 he examined the respondent for the Atlantic Life Insurance Company, to whom the respondent had made application for additional life insurance. In his medical report on that examination, this physician stated that the applicant is "now totally and permanently disabled", not because of any physical or organic trouble, but because of the loss of his right hand, and of the injuries to his left hand, as hereinbefore related, and the record discloses that the Atlantic Life Insurance Company issued the policy applied for. The testimony of this doctor has no bearing on the present issue (*Hickman v. Aetna Life Insurance Company*, 166 S. C., 316, 164 S. E., 878), but the application for the insurance (signed by the respondent), to which the doctor's report is attached, is pertinent in that the respondent stated therein that his health is good, that he had no reason to think that he might be physically impaired, that he had never changed or been advised to change his occupation or residence on account of his health, and that he had never had any of a number of stated diseases or symptoms and "No other illness, disease or injury not mentioned above."

The factual situation thus presented is an unusual one. Evidently the respondent is a man of more than ordinary in-

tellectual capacity, with executive ability of a high order, and with a fine sense of civic obligation. His accomplishments since his accident, as disclosed by the record, evoke admiration.

However, our sole problem here is to determine whether, within the contractual stipulations of the policies issued to him by the appellant, he is to be regarded as totally and permanently disabled, and thus entitled to the benefits which he claims under the policies. In short, the question is whether the respondent "has been total'y and permanently disabled by bodily injury or disease, so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation  *  *  *."

Taking this contractual stipulation literally, the testimony clearly negatives any claim that the respondent, by reason of injury, has been wholly prevented from performing any work for compensation, gain or profit, or from following any gainful occupation, for the undisputed fact is that from the time that the appellant discontinued making monthly payments to the respondent under the policies, and discontinued its waiver of premiums, the respondent has been in fact performing work for "compensation, gain or profit" and has been "following (a) any gainful occupation."

The theory of the trial Judge in submitting this case to the jury, and the contention of counsel for the respondent, is that notwithstanding the clearcut conflict between the policy provisions above quoted and the undisputed testimony respecting the gainful employment in which the respondent is engaged, the respondent is nevertheless entit'ed to recover, because under the decisions of this Court involving similar policy clauses, the insured has been held entitled to recover, or to have his right of recovery submitted to a jury, if from the evidence it is found that the insured, by reason of bodily injury or disease, has been

rendered incapable of performing all of the material acts necessary to the prosecution of the business or profession in which he was engaged before the accident or the illness as the result of which the insured's claim arose.

Policy provisions identical with or substantially similar to the policy provisions in question in this case have come before this Court in numerous cases involving claims for total and permanent disability benefits. None of them deals with a state of facts similar to that related above, and as said by Chief Justice (then Justice) Bonham in the case of *Stewart v. Pioneer Pyramid Life Insurance Company*, 177 S. C., 132, 180 S. E., 889, 891: "What constitutes total and permanent disability within the purview of such contracts has been definitely determined by this court in a number of cases. There is no doubt thereabout; the difficulty lies in the application of the law. Each case must be governed by the facts as shown by the evidence."

The general rule deducible from the decided cases is thus stated in *Kiser v. Sovereign Camp, Woodmen of the World*, 192 S. C., 465, 467, 468, 7 S. E. (2d), 220, 221: "If the insured is unable to perform all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner, *and such business or occupation is the only work that he has been trained to do,* and upon which he must depend for a living, then the insured is totally disabled as contemplated by contracts of insurance; but if such business or occupation is not the only work that he has been trained to do, and not the only work upon which he must depend for a living, and the insured is physically and mentally able to engage in such other business or occupation, then the insured is not totally disabled." Italics added.

The application of the rule to the present case involves an entirely new factual aspect, as far as the decisions of this Court are concerned. The question now confronting us may be stated thus: Where, as the result of motions for a non-

suit and for a direction of verdict, it is to be taken as admitted that the insured is unable to perform all of the material acts incident to the adequate prosecution of a business for which he has special training and has followed for many years, but is nevertheless enabled, by reason of new professional or business skills or experience acquired by him, to perform the duties of a full time job in a new field for compensation reasonably comparable with the amount of compensation formerly earned by him, can it be said that the insured is "continuously and wholly prevented (by reason of his injury) thereby from performing any work for compensation, gain or profit and from following any gainful occupation"?

To refuse to apply the language of the policy to the facts thus stated would be literally to reject the policy limitations, even under the liberal rules of construction applied by this Court.

The nearest approach to the problem in the decisions of this Court is found in the case of *Kizer v. Sovereign Camp, Woodmen of the World, supra,* in which the essential facts are thus stated: "The appellant testified that he was formerly engaged 'in the business of farming, cotton buyer, handling fertilizers and bought and sold truck'; that he became ill in 1936 and 'practically quit' the performance of the aforementioned tasks towards the end of 1937. Appellant's condition was diagnosed by his attending physician and witness as angina pectoris. Had this been all the testimony on this issue the trial Judge would have been required to submit the case to the jury, but facts were developed which showed the appellant had originally been a bricklayer, was trained as a bricklayer, and at the time of the trial of the case, on June 15, 1939, and since March 8, 1939, was actively and regularly engaged as a bricklayer in the City of Charleston, working 140 hours a month. Although an issue of fact was created by the evidence as to the ability of appellant to perform or do substantially all

material acts necessary to the prosecution of his farming, cotton buying, fertilizer and truck interests, this issue became academic by reason of appellant's active and regular pursuit of bricklaying, an avocation in which he was trained and could and did depend for a living."

Another decision of this Court which is at least pertinent to the issues here presented is that of *Fetner v. Aetna Life Insurance Company*, 199 S. C., 79, 18 S. E. (2d), 521, 523. In that case, as the result of a serious illness and two operations, the insured was unable to perform the duties of the job which he held prior to his illness. He however went back to work for the same employer, and was given a different job involving much shorter hours of work, and less arduous work for which however he was paid the same compensation which he had previously earned. The duties of the new job were substantially different from those of the insured's original position, but by reason of his long association with the business of his employer, "he was more or less familiar with the work which he is now doing, or was doing at the time of the trial of this case. The mere fact that appellant did not get his same job back when he reported for duty  *  *  *  would not entitle him to be declared totally and permanently disabled. The question is: Is the appellant totally and permanently disabled from engaging in gainful employment—employment with which he has such familiarity that he can perform the duties thereof? On the record in this case, the answer must be no."

It is not enough to enable the insured to recover that he is not in good health, or that by reason of his physical condition he is unable to work as long hours as he has been accustomed to do. If he is able to perform the accustomed tasks of his vocation, even though his earning capacity has been reduced by reason of physical impairments, his case does not come within the scope of the policy provisions in question in this case.

In the case of *Owens v. Sovereign Camp, W. O. W.*, 174 S. C., 514, 178 S. E., 125, 126, this Court said:  "*  *  *

While it appears that the insured was an unwell man, perhaps seriously afflicted, it was conceded that, from the date he claimed his disability began to the time of the trial of the case, he had continued to work, although not on full time and with a somewhat decreased production, in the Easley mill, at his accustomed task, which he had been trained to do, and upon which he depended for a living; and we find no evidence in the record which shows, or from which the inference might be drawn, that he was unable, during the period of his alleged total disability, to do all the material acts necessary to the prosecution of such occupation or work, in substantially his customary and usual manner. The defendant therefore was entitled to a directed verdict."

In the case of *Long v. Mutual Life Insurance Company*, 197 S. C., 492, 15 S. E. (2d), 761, 763, this Court held that the plaintiff's claim was properly submitted to the jury under the facts there presented, but in the opinion of the Court this statement of a phase of the problem with which we are dealing in the present case is made: "* * * May an insured, prevented by physical disability from performing the heavy, weighty or arduous duties of his occupation, recover disability benefits when for substantial remuneration he utilizes the knowledge, experience and training derived from his association with his occupation? The criterion upon which to base an answer for this question is replete with difficulty as the facts of each case will determine the correct answer, but, it may be said, the question, in the general sense, should receive a reply in the negative. Financial return is not, standing alone, the test for total and permanent disability. Insurance benefits are not intended to guarantee that the insured will be the recipient of the same amount, or substantially the same amount, of wages, salary, or financial return. * * *"

It is to be borne in mind that in this case we are not dealing with policy provisions which are ambiguous, or with a

state of facts from which more than one inference may be drawn respecting the capacity of the insured to perform all of the duties of an occupation in which he is actually engaged, and for which he is well qualified, and is adequately remunerated. On the contrary, the undisputed testimony in the present case bears eloquent tribute to the possession by respondent of the qualities of leadership, and mental and physical capacity necessary to perform the duties of a gainful occupation in which he is actually employed. It is apparent that the additional education which he acquired after his disability ensued, and the experience which he thereafter sought and obtained in the field of welfare or social work, fits him into a new niche in the business world, where his services seem to be meeting high commendation from those who are qualified to judge.

The opinions of the insured himself and of his family physician respecting his incapacity and the extent thereof cannot prevail, or raise an issue of fact for the jury, in the face of the physical facts disclosed by the record. *Hickman v. Aetna Life Insurance Company, supra*; *Cotton v. Equitable Life Assurance Society*, 195 S. C., 194, 10 S. E. (2d), 909.

This case is to be distinguished from the numerous cases in which the action of the trial Court in submitting the issue to a jury was upheld on the ground that although the insured continued in some measure to carry on the particular line of work in which he had been previously engaged and for which he had been trained, he was unable to perform every one of the material acts incident to such work, and after his disability had to delegate some of his work to others. Typical of these cases is that of *Dukes v. Jefferson Standard Life Insurance Company*, 172 S. C., 502, 174 S. E., 463. In that case farming was the life occupation of the insured. However, for sixteen years prior to the illness which was alleged to have created disability, the insured had also been sheriff of his county, and after such illness, prior

to the time of the trial of the case, the insured campaigned for re-election as sheriff and was nominated for the office and was occupying the same at the time of the trial, and would continue to occupy it for the remainder of a regular four-year term. But the illness of this insured, according to the testimony, had rendered him incapable of continuing the operation of his farm personally, and since his illness his wife had taken charge of the farm, while the sheriff's office was managed for the insured by his deputies and his assistants. On this state of facts it was held that the case was properly submitted to the jury, and that a verdict in favor of the insured would not be disturbed.

Clearly the *Dukes case,* like the other cases upon which respondent relies, was one in which the insured did in fact suffer disabilities, deemed by the jury to be total and permanent,. which under the evidence impaired the insured's capacity to do all of the essential things necessary to enable him to carry on his vocation effectively, and without the assistance of other persons. Such cases cannot be thought to be authority for the broader proposition upon which the respondent relies in this case to the effect that recovery may be had, even though the insured is gainfully employed in a business or profession for which he is well qualified, and is adequately remunerated, simply because this is not the same business or profession in which the insured was engaged at the time of the accident which resulted in his alleged disability.

In the present case, during the period 1933-1939, inclusive. the respondent (it must be assumed for present purposes) was totally and permanently disabled within the provisions of his policies, and was entitled to the disability benefits provided thereby. If in 1940 he had returned to his former job, and had found that he could perform the duties thereof, he would not be permitted to recover in this case because of an intervening period of disability and of an admitted physical impairment of a permanent nature. It can-

not make any difference that, instead of returning to his former job, he equipped himself to engage in an entirely different vocation in which he employs all of his time and talents, and for which he admittedly possesses all of the physical and mental faculties necessary to the successful and acceptable performance of his work.

The judgment of the lower Court is reversed and the cause is remanded for the entry of judgment in favor of appellant.

MR. CHIEF JUSTICE BONHAM, MR. ASSOCIATE JUSTICE FISHBURNE, and CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, concur.

MR. ASSOCIATE JUSTICE STUKES (dissenting):

I regret that I do not agree that the issue presented by this appeal is properly determinable by the Court upon the evidence of the earnings of the insured; if it were, it would be a difficult case and I am not prepared to say that I would dissent from Mr. Justice Baker's decision.

But in my view the appeal presents no such problem; it is only one of law, not of fact; was there evidence from which the jury could reasonably infer, as by their verdict they did, that plaintiff was disabled within the terms of the policies, in the light of the decisions of this Court upon the subject? Careful consideration of the record compels me to favor an affirmative answer to the stated question.

Plaintiff, when insured by defendant had only one hand and that he largely lost the use of it by violent accident while the insurance against disability was, and had for years been, in force, is not disputed; and that this misfortune deprived him of ability to pursue his occupation as State sales manager of a large tobacco manufacturer is not seriously contested. But it is urged that because plaintiff was earning (after years of no earnings) at the time of trial $3,600.00 per year as executive director of the Columbia Community Chest (a well-known public charity), his insurance is in effect suspended. I am sorry that it is doubtful whether this

is a proper place to felicitate the insured upon his courage, perseverence and present degree of success. How much easier it would have been for him to have remained a maimed and helpless invalid! His undisputed testimony was that he earned $5,200.00 in his position of private employment during the year of his disabling injury; that he was upon a basis of $4,000.00 annual salary plus a bonus which varied from $400.00 to $2,000.00 and averaged $600.00.

However, I think it clear that comparative earnings are only one circumstance for consideration by the jury in determining the ultimate question of fact, namely, whether the insured is disabled within the meaning of the policy. According to my understanding, this principle was declared and applied in the recent case of *Long v. Mutual Life Insurance Company,* 197 S. C., 492, 15 S. E. (2d), 761.

The instant case seems to me very like that of *Davis v. Metropolitan Life Insurance Company,* 164 S. C., 444, 162 S. E., 429, in which the insured had been an employee of an express company and his duties required manual strength and ability; he suffered an accident from which he lost the use of an arm and was permitted to recover for permanent and total disability although at the time of the trial he was employed by a college as a night watchman for which he was paid $60.00 per month. The report does not show his former earnings. The opinion of this Court was a well-considered one by Mr. Justice Stabler, afterward Chief Justice, and was without dissent. He reviewed our earlier authorities and quoted freely from the leading texts, which need not now be gone over again. It seems to me that the rule adopted in that decision includes this case and a following of it requires affirmance here.

See also the kindred case of *Haynes v. Ware Shoals Mfg. Company,* 198 S. C., 75, 15 S. E. (2d), 846, where the successful claimant for workmen's compensation (award for bodily disfigurement adversely affecting earning capacity) was making as much at the time of the hearing as be-

fore the disabling accident. The function of the Industrial Commission with respect to questions of fact has been often aptly likened to that of the trial jury in a law case, such as this. South Carolina and other decisions in 34 West's S. E. and S. C. Digest, Supplement, Workmen's Compensation, Key 1939.

It is unnecessary to here further discuss the foregoing or other similar authorities from the rule of which I think Mr. Justice Baker's opinion departs.

In my view appellant is bound by the verdict of the jury which I think was founded upon competent and relevant testimony which justified their conclusion. There is no complaint of the trial Judge's rulings upon the admission of evidence or of his instructions to the jury concerning the applicable law. Thus, I think the judgment should be affirmed.