15671

BELCHER v. PRUDENTIAL INSURANCE COMPANY OF AMERICA

(31 S. E. (2d), 1)

*Messrs. Osborne, Butler & Moore,* of Spartanburg, S. C., Counsel for Appellant,

*Messrs. Odom & Bostick,* of Spartanburg, S. C., Counsel for Respondent,

August 7, 1944.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous Opinion of the Court:

Plaintiff has two policies of life insurance in the amount of $1,000.00 each which were issued to him by appellant in 1930 and 1931. Each policy contains the usual provisions for total and permanent disability which entitle the assured, in the event of such condition, to a $10.00 payment per month, in the case of each policy, and waiver of premiums,

after due proof of the existence of such disability for four months and during its continuance.

Acceptable proof of disability was submitted by plaintiff in 1938 and appellant paid the monthly benefits through February, 1941, at which time, and subsequently, appellant contended that disability within the terms of the policy no longer existed and it refused further payments and waiver of the quarterly policy premiums. In August, 1943, plaintiff, now respondent, commenced this action, seeking recovery of the monthly benefits and the premiums which had been paid, from March, 1941, to the date of the institution of the action. Two defenses were set up by the insurer, first a denial that disability existed during the continued period and, secondly, that the condition precedent of due proof of the continuation of the disability had not been met.

The issues were tried before a jury in the Spartanburg County Court in November, 1943, and resulted in a verdict for the respondent for the full amount claimed. The trial Judge refused motion for direction of the verdict in favor of appellant, and alleged error therein is the first and major issue of this appeal. Other issues are, as set forth in appellant's statement prefacing its brief: Second, was it prejudicial error to admit the testimony of respondent relating to the cost and maintenance of his hearing aid? Third, did respondent comply with the requirement of submission of proof of disability? Fourth, did the Court err in his charge by referring prejudicially to the facts, or in charging irrelevant and misleading legal propositions? And fifth and finally, did the Court err in applying the supposed rule relating to disability in the case of a new occupation when the issue was in reality whether respondent was disabled from carrying on his former occupation?

As indicated, respondent's disability is deafness and there is no question in the evidence but that it exists in an extreme degree. He and his physician testified that his sense of hearing was practically entirely lost and that the elec-

trical device in aid of it supplied hearing to the extent of about ten per cent. of normal. The doctor said it was "nerve" deafness which would gradually grow worse. This was uncontradicted; indeed, no evidence was introduced by appellant except a deposition taken in the home office relating to the form and content of respondent's proof and claim for the disability benefits which his policies provided.

Respondent, before his deafness interfered, conducted a gasoline filling station upon commission for one of the large oil companies from which his income naturally fluctuated. For workman's compensation his average weekly earnings were established at $34.60. He testified that his income was from $35.00 to $50.00 per week and that he paid his "wash boys" a total of $15.00, but we think it fairly inferable from his testimony that his income from the washing and greasing of cars was additional to his commissions upon the company's products which he sold and out of this additional income he paid the incidental expense and made a further profit. He gave up his business for a while and went to a distant climate, which however, did not benefit him and he returned to Spartanburg. For a while he had employment upon a salary of only $12.00 to $14.00 per week, when he worked on radiators, repaired tires, etc., with which his inability to hear handicapped him comparatively little. Formerly, in his normal occupation of operation of the filling station, he was able to help out on wash and grease jobs, but with his hearing aid such was impossible because of its general delicacy and because water or grease in contact with it put it out of commission.

Since January, 1942, respondent has operated a "one-man" station for the proprietor and does not undertake to wash or grease cars or repair tires and, without a helper, he only sells, and it is easily inferable from the record that he is badly handicapped, even in this limited occupation. His compensation is $20.00 per week plus a commission, the details of which latter are not in evidence, but its result

is negligible for during the month preceding the trial it amounted to about $2.50. Appellant strenuously argues that the testimony shows that respondent has limited the field of his activities in the filling station because of the scarcity and dearness of help which would care for the washing, greasing and tire-repairing, if it were available at more reasonable cost. But this and other factual issues presented by appellant in its brief were concluded by the verdict, unfavorably to appellant. The jury heard the testimony of respondent and were able to observe the difficulty with which he heard the queries of counsel; the record is full of repetitions of questions, occasioned by his inability to hear them when first asked, and this with the aid of the device to which he had been fitted for the purpose.

A great deal of appellant's argument is devoted to the contention that recent decisions of this Court have adopted a doctrine of comparable earnings, applicable to the problem of whether an assured is disabled within the terms of policies such as these, and the cases of *Moyle v. Mutual Insurance Co.,* 201 S. C., 146, 21 S. E. 2d, 561, and *Dunlap v. Maryland Casualty Co.,* 203 S. C., 1, 25 S. E. (2d), 881, 149 A. L. R., 1, are cited. It is urged that they are applicable only to instances where the assureds have acquired new skills and entered new occupations, from which the earnings must be comparable to the former income from the normal occupation in order to deprive the assureds of the disability benefits otherwise accruing under the policies. In this case, appellant says the respondent is still engaged in his former occupation, his activity in which is limited because of war conditions and resulting difficulty and high expense in the employment of helpers, so that his present earnings of $20.00 per week should not be compared with his former earning of $35.00 to $50.00 a week in order to establish existing disability, within the terms of the policies.

Granting the soundness of the premise of appellant's argument that the alleged rule of the *Moyle* and *Dunlap cases* is not applicable, we are unable to perceive any prejudice to appellant from application of it, if it had been so conceived and applied by the trial Judge. Comparison of former earnings with present income is one of the means of ascertaining the existence of a compensable disability, ordinarily for the consideration of the jury, in determining the issue of whether an assured is in fact disabled within the terms of a policy.

This was one of the tests pointed out in the case of *Long v. Mutual Insurance Co.*, 197 S. C., 492, 15 S. E. (2d), 761. The instant case is more akin to that than to any other which has been brought to our attention. Long proved that he was disabled within the terms of the policy there involved although at the time of the trial he was back at his old job where he was performing only some of the duties formerly attendant upon it, which is the case of *Belcher* here. Unquestionably the latter is incapacitated by his almost complete deafness to perform all of his former duties in the operation of a filling station in substantially his accustomed manner, and he has suffered a severe setback in the amount of his income.

*McCutchen v. Insurance Co.*, 153 S. C., 401, 151 S. E., 67, 82, was a case in which deafness disabled the plaintiff, within the terms of the policy, in the pursuance of his former occupation as a merchant and cotton buyer. There this Court, in affirming judgment for plaintiff, said in part as follows: "Total deafness may mean 'total disability,' as that term is known to our law, as to some particular person, and it may mean practically nothing, when applied to some other person, in the matter of earning a livelihood or ability to engage in an occupation or employment. There are many, many things to be considered in correctly determining the effect of deafness upon a person's ability and capacity. Each case must stand upon its own peculiar facts, for as the au-

thorities hold, 'total disability' is a relative matter. It is impossible for this court to lay down any rule of law, which could operate as an absolute standard or guide in the many cases which may have to be determined. The safe rule—in fact the only rule—when there is conflicting evidence, is to permit twelve men, constituting a jury, to hear the evidence, see the witnesses, and determine what is right. There was ample testimony to warrant the presiding judge in submitting the case to the jury."

The considerations which have been set forth dispose of appellant's first and fifth questions, which must be answered adversely to its contentions, and the exceptions thereabout are overruled.

Turning to the second question, whether respondent's expenses in connection with the acquisition and upkeep of his mechanical hearing aid should have been admitted in evidence and, if not, whether such was prejudicial to appellant, we need answer only upon the last branch of it; no authority has been submitted either way. But, as indicated, it cannot be reasonably contended that appellant was prejudiced, if it were error. Respondent's earnings have been very materially reduced because of his inability to perform the accustomed duties of his occupation in the customary manner, so his additional diminution of income resulting from his use of the expensive hearing aid was not necessary to be considered by the jury in finding their verdict. Moreover, the liability of appellant, when it exists, is in a fixed amount, unaffected by respondent's expenses in combating his disability. A disabled assured could not testify as to hospital and medical attention under the logical extention of appellant's view, for such would imply expenses and be inadmissible on that account.

The cost of curing a disability by resort to expensive and sometimes uncertain and dangerous surgical or other treatment presents a somewhat analogous question. The follow-

ing thereon is quoted from 1 Appleman, Insurance Law and Practice, § 656, p. 825 : (To require insured to undergo an operation) "means that the Court requires the insured either to spend his own funds for the doing of a useless thing, if the operation proves unsuccessful, or ·to expend his own money to relieve the insurer of an obligation which it has voluntarily contracted. Since such policy provisions receive a .liberal construction this financial angle has had some appeal to the Courts in arriving at their decisions." The foregoing is supported by our cases of *Jones v. Assur. Soc.,* 173 S. C., 213, 175 S. E., 425, and *Ford v. Ins. Co.,* 176 S. C., 186, 180 S. E., 37.

The record shows that the trial was of the issue as to whether respondent was disabled within the terms of the policy, even with his increased sense of hearing supplied by the hearing aid, so the cost and expense of the latter were immaterial. If the disability were removed by the device, a question of whether the expense of it should be admitted in evidence might arise, but it did not in this case ·because the evidence is clear and undisputed that with it the impairment was ninety per cent. or more, from which respondent's disability resulted.

Another reason why the admission of the questioned evidence was harmless error, if error at all (which latter need not be and is not, decided), is hinted above, namely, that it had no relevancy, and therefore no effect, upon the measure or amount of the recovery. The latter, if proper at all, was properly for an amount fixed by the terms of the policies, the contracts. In gamblers' language, it was a case of "all or nothing."

Respondent's last proof of his disability showed frankly and honestly that he was working and earning at the time of the claim, and the accompanying certificate of examination by his physician showed the same and that, in the professional opinion of the examiner, respondent was not wholly incapable of performing any part

of his usual work, and that he was, in fact, at that time working as a service station employee. The stated facts give rise to appellant's third question and it contends thereunder that respondent, by this claim and proof, did not comply with the policy requirement that he submit proof that he was disabled in accord with the policy provisions. The obvious answer is that the policy provisions referred to are not literally applicable under the decisions of this Court, or those of other jurisdictions. An assured under such a policy does not have to prove upon trial that he is wholly incapacitated to perform any of the duties of his occupation, but only that he is substantially so disabled and that he is unable to carry on in his usual and accustomed manner the ordinary duties of such occupation. Many pertinent cases from this Court (in addition to those cited *supra* in the discussion relating to the first question) may be found by reference to 19 S. E., Dig., 396 and Pocket part, Insurance, Key 516.

"The expression 'total 'and permanent disability' is not construed so as to require the insured to be in a state of either physical or mental helplessness in order to establish a recovery. It was not the intention of the parties to confine recovery to instances of invalidism, coma or insanity * * *. Nor is it fatal that the insured may conceivably be able, by some means, to earn some money. Absolute financial helplessness or incapacity to earn money need not be shown; the usual test applied by the Courts being the inability to perform the material acts of the insured's business in substantially the usual and customary manner." 1 Appleman, Insurance Law and Practice, § 651, pp. 804, 805.

The fourth question made by appellant, relating to the Court's charge to the jury, only remains to be considered The burden of the complaint is that the Court charged the theory that the respondent was engaged after his disability in a new occupation and that the rule of comparable earnings of the cases of *Moyle* and *Dunlap, supra,* was applicable. Study of the Judge's charge discloses that in the reading of

some of the prayers of respondent for instructions this doctrine was referred to, but it is plain that the Court did not subscribe to its pertinency, and this must have been clear to the members of the jury in view of the contents of the charge and particularly appellant's prayers which were also read to them. Before the Court commenced its charge to the jury, appellant's alert counsel raised the question alluded to, namely, that in his view the doctrine of new occupation and comparable earnings did not arise under the evidence because respondent was engaged at the time of trial, even with limited activity, in the same work at which he was employed before the alleged disability arose. This the respondent's counsel contested, at least to the extent of contending that it was a jury question. But the Court sustained appellant's position and held, in effect, that there was nothing in the evidence relating to any occupation other than that of a filling station operator. At the conclusion of this colloquy appellant's counsel stated: "I just wanted to get that clear before we started the argument." The quotation amply indicates counsel's satisfaction with the view of the Court.

Upon consideration of the charge as a whole, while we think it could have been clearer, we find it over and over again stated that the rule of law to be applied to the evidence by the jury was that total disability within the terms of the policy existed only if respondent was unable therefrom to carry on his usual filling station duties in substantially his customary manner, as the Court said: "Total disability is inability to do all the material acts necessary to the prosecution of the insured's business, in substantially his customary and usual manner." The Court refused, expressly in the latter portion of the charge, to follow respondent's counsel in his insistence that the jury might find that the respondent was engaged in a new occupation. The Court said: "He (respondent) occupies a different position with reference to it, but it is the same kind of business."

As stated above, the charge was not as clear as it might have been, but we do not think that it was so to the extent of confusing the jury upon the issue, and much of the alleged confusion would probably have been avoided had the Court not been so many times interrupted by counsel. However, we find no reversible error.

The exceptions are overruled and the judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE and OXNER concur.

MR. ASSOCIATE JUSTICE TAYLOR did not participate.