905 F.2d 1529
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
O.A. ETHRIDGE, Plaintiff-Appellee,
v.
LUMBERMANS MUTUAL CASUALTY COMPANY, Defendant-Appellant.
 No. 89-2908.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 7, 1990.
Decided May 14, 1990.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Charles E. Simons, Jr., Senior District Judge. (CA-87-1826)
 Robert Watson Foster, Jr., Nelson, Mullins, Riley & Scarborough, Columbia, S.C. (argued), for appellant; Richard B. Watson, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., on brief.
 Joel Wyman Collins, Jr., Collins & Lacy, Columbia, S.C. (argued), for appellee; Mark S. Barrow, Collins & Lacy, Columbia, S.C., George S. Nicholson, Jr., Patrick J. Frawley, Bouknight, Nicholson, Davis, Frawley & Anderson, Lexington, S.C., on brief.
 D.S.C.
 AFFIRMED.
 Before CHAPMAN and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Dr. O.A. Ethridge filed suit against his insurer, Lumbermans Mutual Casualty Company, alleging breach of contract and bad faith termination of disability benefits. In response to four interrogatories, a jury found that Ethridge was totally disabled on November 24, 1986, continued to be disabled to the present time, and Lumbermans did not act in bad faith in discontinuing the payments. The court entered judgment for Ethridge on the verdict. Lumbermans moved for judgment notwithstanding the verdict on the ground that it was entitled to judgment as a matter of law because no facts relevant to the total disability issue were in dispute. Lumbermans alternatively moved for a new trial on the grounds that the court had committed reversible error by allowing testimony about Ethridge's future physical condition, by charging the jury that any ambiguity in the insurance policy should be construed against the insurer, and by allowing testimony of Lumbermans' net worth. The district court denied the motions and Lumbermans appealed. We conclude that the district court properly denied Lumbermans' motions for judgment notwithstanding the verdict and for a new trial.
 
 
 2
 * On December 15, 1978, Lumbermans issued a disability insurance policy to Dr. Ethridge, a sole practitioner specializing in pediatric dentistry in Columbia, South Carolina. The policy provided that Lumbermans would pay Ethridge monthly benefits of $3500 if he became totally disabled by accident or sickness. The policy defines "totally disabled" during the first five years after the injury or sickness as "disability which wholly and continuously prevents an Insured ... from performing all the duties of that specialized area of practice." After the initial five year period, total disability only exists if the insured is "wholly and continuously disabled by reason of injury or sickness from engaging in any occupation or employment for wage or profit for which he is qualified or becomes qualified by reason of his education, training or experience."
 
 
 3
 Ethridge suffered paraplegia as a result of an automobile accident on November 24, 1981. He cannot stand or walk without assistance. He suffers from complications of paraplegia, including blood pressure problems, significant pain, and bladder impairment causing chronic urinary tract infections.
 
 
 4
 Lumbermans paid benefits under the policy for the initial five year period. Ethridge returned to his dental practice within the first five years after the accident. Lumbermans discontinued payments to Ethridge on November 24, 1986, the date of expiration of the initial five year period, and this litigation ensued.
 
 II
 
 5
 In determining whether the district court should have granted Lumbermans' motion for a directed verdict or for judgment notwithstanding the verdict, the issue is whether there was sufficient evidence from which a jury could reasonably infer that Ethridge was totally disabled within the terms of the insurance policy. The evidence must be viewed in the light most favorable to Ethridge. Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891 (4th Cir.1980).
 
 
 6
 The South Carolina Supreme Court has "uniformly adopted the principle of liberal construction" of disability clauses in insurance policies. Dunlap v. Maryland Casualty Co., 203 S.C. 1, 7-8, 25 S.E.2d 881, 883 (1943). The court amplified this observation by explaining:
 
 
 7
 The "total disability" contemplated by an accident policy does not mean, as its literal construction would require, a state of absolute helplessness; but rather, that the disability means inability to do all the substantial and material acts necessary to the prosecution of the insured's occupation or any business or occupation in a customary and usual manner; the words "total disability" have always been taken in their relative sense.
 
 
 8
 203 S.C. at 8, 25 S.E.2d at 884.
 
 
 9
 Both parties submitted evidence at trial concerning the question of whether Ethridge could perform all the material acts of pediatric dentistry in substantially his customary manner. We believe there was substantial evidence from which the jury could reasonably infer that Ethridge was totally disabled and entitled to benefits under the insurance policy.
 
 
 10
 The evidence against a finding of total disability focused on the number of patients Ethridge scheduled and his salary. Ethridge testified that he treated as many patients within a given week as before the accident. He also testified that he earned more salary in 1984, 1985, and 1986 than in the year preceding the accident, and the gross income of the practice was higher in subsequent years. The jury reasonably could have given little weight to the evidence about salary in light of the testimony of Robert C. Arndt, a representative of Lumbermans. He testified that Lumbermans did not consider Ethridge's income as a factor in its decision to discontinue benefits.
 
 
 11
 The evidence of total disability included testimony of a reduced work week, fewer duties performed, referrals of patients, delegation of tasks, and expert testimony about Ethridge's medical condition. Ethridge testified that his paraplegia required him to reduce his work schedule from five days per week before the accident to two full and two part time days per week. When he is not in the office, he must generally stay in bed and wrap his legs in a heating pad. He is physically unable to schedule work at all one day a week. His pain and fatigue have required him to miss work on some days and to cancel a week of appointments in August 1988. Ethridge testified that his paraplegia prevents him from performing certain dental duties, specifically root canals, surgical extractions, x-rays, and dental impressions. He referred very few patients to other doctors prior to the accident, but his physical condition has required him to refer root canals, surgical extractions, and x-rays to other doctors. He has delegated more duties to his staff since the accident. Mrs. Ethridge, who works occasionally as a dental hygienist in her husband's practice, testified that Ethridge is not physically able to control his young patients without help from a dental assistant.
 
 
 12
 Dr. Jay M. Markowitz, Dr. Rex Brugh, III, and Dr. J.E. Carnes testified as expert witnesses at trial. Dr. Markowitz, an internist and Ethridge's doctor since 1975, testified that in his opinion Ethridge is incapable of performing the customary activities of a dentist or pediatric dentist. Dr. Brugh, a urologist, testified that Ethridge's urological problems "will interfere with his practice. But in the every day practice if he takes his usual precautions, he should be able to function." Dr. Carnes, a neurologist, testified that Ethridge "is unable to function as a dentist as he has been trained."
 
 
 13
 It is true that medical evidence showing Ethridge's paraplegia and related health problems, in and of itself, would not be sufficient evidence to support a finding of total disability. Opinion testimony of the doctors cannot be controlling evidence if it conflicts with evidence that the insured was able to perform substantially the customary work of his profession or engage full time in other work. Moyle v. Mutual Life Ins. Co., 201 S.C. 146, 156, 21 S.E.2d 561, 564 (1942); Cotton v. Equitable Life Assurance Soc'y, 195 S.C. 194, 198, 10 S.E.2d 909, 910 (1940). Here, the medical evidence is supported by other evidence that Ethridge was unable to perform all the acts of his profession in substantially his customary manner. It was clearly appropriate for the jury to weigh the doctors' opinions of Ethridge's condition as one factor in determining whether he was totally disabled. In South Carolina, a claimant "may submit evidence that in the particular circumstances applicable to himself, the injury rendered him totally and permanently disabled within the meaning of the policy." Dunlap, 203 S.C. at 10, 25 S.E.2d at 884.
 
 
 14
 There was evidence from which a jury could infer not only that Ethridge was unable to do all the substantial acts necessary to pediatric dentistry but also that Ethridge was unable to engage in other employment for which he was trained. The other employment must "reasonably approximat[e] the same livelihood, as the insured might fairly be expected to follow in view of his station, circumstances, training, aptitude, and physical and mental capabilities." Dunlap, 203 S.C. at 8-9, 25 S.E.2d at 884. Dr. Ronald L. Follner, a neurologist hired by Lumbermans to evaluate Ethridge in November 1984, reported that Ethridge could not return "to his former medical specialty either on a full time or part time basis," but he suggested that Ethridge might be capable of teaching dentistry. Although Ethridge was qualified, there was no opportunity for him to teach dentistry in his home city of Columbia, because the city had no dental college.
 
 
 15
 The cases cited by Lumbermans are distinguishable. In Moyle, 201 S.C. 146, 21 S.E.2d 561, the South Carolina Supreme Court reversed the trial court's judgment entered on a verdict for Moyle, the insured under a disability clause, on the ground that he was not totally disabled as a matter of law. Moyle originally worked as a salesman for a cigarette company. After losing the use of both hands, he was unable to perform the duties of his job. He went to law school, then worked full time as an executive director of a charitable fund raising agency. Moyle, unlike Ethridge, changed his vocation after his injury and there was no dispute that he was able to perform successfully all the material acts incident to his new job. 201 S.C. at 154, 162, 21 S.E.2d at 564, 567. The court said:
 
 
 16
 This case [Moyle] is to be distinguished from the numerous cases in which the action of the trial court in submitting the issue to a jury was upheld on the ground that although the insured continued in some measure to carry on the particular line of work in which he had been previously engaged and for which he had been trained, he was unable to perform every one of the material acts incident to such work, and after his disability had to delegate some of his work to others.
 
 
 17
 201 S.C. at 162, 21 S.E.2d at 567. Ethridge's case is among the category of cases that the court in Moyle specifically found to involve an issue for the jury.
 
 
 18
 In Fetner v. Aetna Life Insurance Co., 199 S.C. 79, 18 S.E.2d 521 (1942), the insured worked for a printer company. He suffered from a lung abscess but completely recovered after two operations. The insured showed no evidence that his inability to do all the work he did before his operations was caused by the lung abscess. In contrast, Ethridge clearly cannot recover from his paraplegia and no causation question is at issue.
 
 
 19
 In Owens v. Sovereign Camp, W.O.W., 174 S.C. 514, 178 S.E. 125 (1935), although the insured worked less than full time and with a "somewhat decreased production" in a mill after his illness, the court found "no evidence in the record which shows, or from which the inference might be drawn, that he was unable, during the period of his alleged total disability, to do all the material acts necessary to the prosecution of such occupation or work, in substantially his customary and usual manner." 174 S.C. at 516, 178 S.E. at 126. Here the record contains such evidence.
 
 
 20
 Cotton, 195 S.C. 194, 10 S.E.2d 909, also differs factually. In Cotton, the claimant worked full time with no complaint to his superiors about any health problems, and they were satisfied with his work. Only after he was discharged because his position was discontinued did he claim disability.
 
 
 21
 In sum, applying South Carolina law, the district court properly denied the motions for a directed verdict and judgment notwithstanding the verdict. The Supreme Court of South Carolina has emphasized: "In the final analysis the criterion is whether or not the insured is able to conduct or prosecute his business or occupation in substantially the usual and customary manner." Long v. Mutual Life Ins. Co., 197 S.C. 492, 497, 15 S.E.2d 761, 763 (1941).
 
 III
 
 22
 Lumbermans argues that the trial court committed reversible error by allowing testimony about Ethridge's future physical condition. The court admitted testimony by Dr. Markowitz, Dr. Brugh, and Dr. Carnes about their opinions based on a reasonable degree of medical certainty of Ethridge's future health problems. Lumbermans' employee, Robert Arndt, was questioned about whether Lumbermans would pay benefits to Ethridge in the future should he become unable to work. Lumbermans contends this evidence was irrelevant under Rules 401 and 402 of the Federal Rules of Evidence or, if relevant, inadmissible because of its highly prejudicial and confusing nature under Rule 403 of the Federal Rules of Evidence.
 
 
 23
 A trial court necessarily must be accorded discretion in deciding whether to admit evidence that is claimed to be irrelevant and prejudicial. Only if the court acted arbitrarily or irrationally should its ruling be overturned. We cannot conclude that the trial court abused its discretion. The evidence cast light on the seriousness of Ethridge's present disability by showing that it was permanent. It did not call upon the jury to speculate about his future.
 
 
 24
 Even if Lumbermans' argument that the evidence should have been excluded has merit, the error would be harmless under Rule 103(a) of the Federal Rules of Evidence, which requires a showing that a substantial right of the party is affected if a claim of error is predicated on an erroneous evidentiary ruling. The admission of the testimony about Ethridge's future physical condition and Lumbermans' future liability, if an error, was not serious enough to interfere with Lumbermans' right to a fair trial. The jury instructions and the interrogatories clearly indicated that the relevant period for the jury to determine whether Ethridge was disabled was from November 1986 until the time of trial.
 
 IV
 
 25
 We find no cause for reversal in the trial court's charge to the jury that any ambiguity in the insurance policy should be construed against the insurer. The court instructed the jury:
 
 
 26
 I charge you that the policy in question must be construed most liberally in favor of the insured since it was prepared and issued by the insurer. I further charge you that any ambiguity, if you find any ambiguity in the policy, must be construed in favor of the coverage and against the insurer because the insurer prepared the policy and it is consistent with contract law that any contract be construed strictly against the party who prepared or drafted it.
 
 
 27
 Lumbermans argues that the disability clause in the insurance contract is not ambiguous and therefore the court erred by allowing the jury to interpret it. Lumbermans relies on an observation in Moyle:
 
 
 28
 It is to be borne in mind that in this case we are not dealing with policy provisions which are ambiguous, or with a state of facts from which more than one inference may be drawn respecting the capacity of the insured to perform all of the duties of an occupation in which he is actually engaged, and for which he is well qualified, and is adequately remunerated.
 
 
 29
 201 S.C. at 161-62, 21 S.E.2d at 567.
 
 
 30
 Contrary to Lumbermans' assertion, the operative language in the policy under consideration in Moyle differs from that in the present case. In Moyle the policy purported to preclude a finding of disability if the insured's impairment prevented him from "performing any work for compensation, gain or profit, and from following any gainful occupation." 201 S.C. at 157, 21 S.E.2d at 565. Lumbermans' policy insuring Ethridge is much more favorable from the standpoint of the insured. Instead of denying recovery if the insured can engage in "any gainful occupation," Lumbermans' policy purports to deny recovery only if the insured's impairments prevent him from engaging in an occupation "for which he is qualified or becomes qualified by reason of his education, training or experience." The difference between the policies is slight, especially in view of the nonliteral construction South Carolina law mandates. Nevertheless, we conclude that Moyle does not dictate reversal of this case.
 
 
 31
 The district court properly instructed the jury as follows:
 
 
 32
 Now we get into the South Carolina law of the definition of total disability, as I understand it. And of course, this has been arrived at with the assistance of counsel for the parties. I charge you that in considering whether or not the plaintiff is totally disabled within the meaning of this insurance policy, total disability does not mean absolute helplessness. The plaintiff may recover under the policy if he is unable to do substantially all of the material acts necessary to perform his occupation in the customary manner or perform an occupation or employment for which he is reasonably fitted or may become trained and fitted and that rationally approaches the same livelihood. Stated another way, one is deemed to be totally disabled when he is no longer able to do his accustomed task and such work as he has only been trained to do and upon which he must depend for a living. Now that's the meat in the coconut as far as the real definition of total disability.
 
 
 33
 I would further charge you that total disability contemplated by the policy pertaining to the extended benefits provision does not mean, as its literal construction would require, a state of absolute helplessness; but rather that the disability means inability to do all of the substantial and material acts necessary to the carrying on of the insured's occupation or any business or occupation which he is qualified and may become qualified to do in a customary and usual manner. And the words "total disability" have always been taken in their relative sense.
 
 
 34
 Because South Carolina law proscribes a literal reading of the policy's definition of disability, it was appropriate for the district court to caution the jury that the policy must not be literally construed and any ambiguity arising from differences in its literal text and the law's definition of disability must be construed in favor of the insured. The instruction about ambiguity is a proper statement of state law. See W.N. Leslie, Inc. v. Travelers Ins. Co., 264 S.C. 408, 413, 215 S.E.2d 448, 450 (1975). At worst, the instruction was simply unnecessary because of the district court's thorough exposition of South Carolina law. Viewed in this light, Lumbermans' complaint about the instruction cannot survive the harmless error mandate of Rule of Civil Procedure 61.
 
 V
 
 35
 Ethridge introduced evidence of Lumbermans' net worth as relevant to the issues of bad faith and punitive damages. Lumbermans assigns error to the admission of this evidence, contending that there was insufficient evidence to submit to the jury the issue of bad faith.
 
 
 36
 We agree with Lumbermans that the issue of bad faith should not have been submitted to the jury. However, Lumbermans fails to show prejudice from the admission of the evidence of net worth. The jury did not award punitive damages. Moreover, Lumbermans' claim that the evidence affected the verdict of compensatory damages for Ethridge by characterizing it as a "deep pocket" party is too speculative to warrant a new trial. We find that the admission of the evidence was harmless error. See Fed.R.Civ.P. 61.
 
 CHAPMAN, Circuit Judge, dissenting:
 
 37
 Because I believe that no jury could reasonably infer that Dr. O.A. Ethridge was "wholly and continuously disabled by reason of injury and sickness from engaging in any occupation or employment for wage or profit for which he is qualified," I dissent from the panel opinion.
 
 
 38
 * On December 15, 1978, Lumbermans Mutual Casualty Company issued to Dr. Ethridge, a practicing pediatric dentist, an insurance policy providing for benefits in the event of "total disability" caused by accident or sickness. Under this policy, an insured is considered totally disabled during the initial five years following an injury or sickness, if he is "wholly and continuously prevent[ed] ... from performing all of the duties of [his] specialized area of practice" (emphasis added). After that time, however, total disability exists only if the insured is "wholly and continuously disabled by reason of injury or sickness from engaging in any occupation or employment for wage or profit for which he is qualified or becomes qualified by reason of his education, training, or experience" (emphasis added).
 
 
 39
 On November 24, 1981, Dr. Ethridge was involved in a serious car accident that rendered him a paraplegic; as a result, Dr. Ethridge suffers many of the debilitating manifestations of paraplegia, including reduced mobility, persistent pain in the lower extremities, difficulty in voiding and resulting chronic urinary tract infections, and both high and low blood pressure. Lumbermans paid full disability benefits for the first five years, performing that part of the policy to the satisfaction of Dr. Ethridge. However, Lumbermans discontinued all benefits on November 24, 1986, and Dr. Ethridge brought this action. The jury found that Dr. Ethridge was totally disabled as of November 24, 1986. Lumbermans moved for judgment notwithstanding the verdict, arguing that it was entitled to judgment as a matter of law. The district court denied the motion, and Lumbermans now appeals.
 
 II
 
 40
 Under the express language of the insurance policy, it would appear plain that Dr. Ethridge is not totally disabled, because he continues to run his dental practice for substantial remuneration. However, the panel opinion correctly emphasizes that the South Carolina Supreme Court, applying the principle of liberal construction, has determined that "total disability," as used in an accident insurance policy, "is not to be literally construed." Owens v. Sovereign Camp, W.O.W., 174 S.C. 514, 515, 178 S.E. 125, 126 (1935). Consequently, the Court has held that, the language of the policy notwithstanding, "it is not necessary that the insured be wholly prevented from performing any work or engaging in any gainful occupation in order to be eligible for indemnity benefits." Dunlap v. Maryland Casualty Co., 203 S.C. 1, 8, 25 S.E.2d 881, 884 (1943). Instead, the test of total disability is the "inability to do all the substantial and material acts necessary to the prosecution of the insured's occupation or any business or occupation in a customary and usual manner." Id.
 
 
 41
 However, the South Carolina Supreme Court has not completely eviscerated such policy language. On the contrary, the Court has spelled out three critical considerations relevant to the determination of "total disability":
 
 
 42
 1. "[T]he insured's financial return."
 
 
 43
 2. "[T]he amount of time the insured is physically able to give to his work."
 
 
 44
 3. "[T]he insured's efficiency, determined by his physical or mental ability."
 
 
 45
 Id., 203 S.C. at 11, 25 S.E.2d at 885 (citing Long v. Mutual Life Ins. Co. of New York, 197 S.C. 492, 497, 15 S.E.2d 761, 763 (1941)). It is the examination of these three considerations that settles "whether or not the insured is able to conduct or prosecute his business or occupation in substantially the usual and customary manner." Long, 197 S.C. at 497, 15 S.E.2d at 763.
 
 
 46
 Applying these factors to the instant case, it becomes clear that Dr. Ethridge is not "totally disabled" even under the liberal construction given that term by the South Carolina Supreme Court. First, Dr. Ethridge's personal income from his dental practice quickly surpassed its pre-accident levels:
 
 
 47
 1980 $ 84,000
1981 (year of accident) $ 120,000
1982 $ 72,000
1983 $ 115,000
1984 $ 162,500
1985 $ 166,830
1986 $ 161,449
 
 
 48
 Likewise, the gross income from his dental practice increased from $241,212 in fiscal year 1979 to $324,342 in fiscal year 1986. These numbers reflect the fact that, as Dr. Ethridge put it, his practice "hopefully has grown" over the years. It is true that "[f]inancial return is not, standing alone, the test for total and permanent disability," because insurance benefits are "not intended to guarantee that the insured will [receive] ... substantially the same amount of ... financial return." Long, 197 S.C. at 497, 15 S.E.2d at 763. However, financial return is an important and often decisive factor. See, e.g., Dunlap, 203 S.C. at 10, 25 S.E.2d at 885 (where insured found totally disabled primarily because his income declined from $6,000 to $2,000 per year); Belcher v. Prudential Ins. Co. of America, 205 S.C. 188, 193, 31 S.E.2d 1, 3 (1944) (where court stated that "[c]omparison of former earnings with present income is one of the means of ascertaining the existence of a compensable disability").[1]
 
 
 49
 Second, while it is clear that Dr. Ethridge works shorter hours as a result of his paraplegia,[2] this fact is not dispositive, given that "[i]t is not enough to enable the insured to recover that he is not in good health, or that by reason of his physical condition he is unable to work as long hours as he has been accustomed to do." Moyle v. Mutual Life Ins. Co., 201 S.C. 146, 160, 21 S.E.2d 561, 566 (1942). More importantly, Dr. Ethridge saw as many patients during a given week after November 24, 1986, as he did before the accident. As a result, Dr. Ethridge more than made up for his reduced hours by becoming more efficient in his work, which is the third consideration propounded in Dunlap and Long. In turn, Dr. Ethridge's impressive upsurge in efficiency enabled him to boost the profitability of his practice. Given Dr. Ethridge's ability to continue his dental practice in a lucrative and efficient manner, it is simply incongruous to hold that he is "totally disabled" under the policy.[3]
 
 
 50
 I recognize that Dr. Ethridge's paraplegia prevents his performance of certain dental tasks, such as root canals, surgical extractions, x-rays, and dental impressions, which he must now delegate to his staff or refer to other doctors. But, in construing "total disability," South Carolina law does not require the insured's inability to do all acts of his occupation; instead, it requires the inability to do only those "substantial and material acts necessary to the prosecution of the insured's occupation." Dunlap, 203 S.C. at 8, 25 S.E.2d at 884. It seems self-evident that if Dr. Ethridge can profitably carry on his occupation without doing these tasks himself, then these tasks are not "necessary" to his occupation as he practices it. In the end, the ineluctable fact remains that Dr. Ethridge continues to earn more than a substantial living from the practice of dentistry.[4]
 
 III
 
 51
 I have no doubts that Dr. Ethridge is unfortunately handicapped by his paraplegia and feel that his "accomplishments since his accident ... evoke admiration." Moyle, 201 S.C. at 157, 21 S.E.2d at 565. However, I do not agree that he suffers from a "total disability" under the insurance policy and South Carolina law. For this reason, I believe that the district court erred in submitting the issue to the jury, and respectfully dissent from the panel opinion on this issue.
 
 
 
 [1]
 The panel opinion states that the jury reasonably could have given little weight to Dr. Ethridge's income levels, because Robert C. Arndt, a health claims supervisor for Lumbermans, testified that the amount of money that Dr. Ethridge made was not a factor in Lumbermans' decision to terminate his benefits in 1986. While this fact is possibly relevant to the issue of Lumbermans' bad faith, it is not relevant to the issue of Dr. Ethridge's disability under the terms of the insurance policy
 
 
 [2]
 Before the accident, Dr. Ethridge saw patients four and one half days, or 38 hours, per week. After the accident, Dr. Ethridge worked three days, or 26 hours, per week
 
 
 [3]
 I do not believe that the opinion testimony of the doctors controls this case, because it conflicts with the physical fact that Dr. Ethridge is able to perform substantially the customary work of his profession. Moyle, 201 S.C. at 156, 21 S.E.2d at 564
 
 
 [4]
 The panel opinion makes much of its ability to distinguish Lumbermans' cases without revealing that the opinion offers no factually analogous case in support of its holding