15530

DUNLAP v. MARYLAND CASUALTY COMPANY

(25 S. E. (2d), 881)

October, 1942.

*Messrs. Herbert & Dial,* of Columbia, S. C., and *Mr. C. L. Cuttino* of Sumter, S. C., Counsel for Appellant,

*Mr. Shepard K. Nash* of Sumter, S. C., Counsel for Respondent,

. April 24, 1943.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous opinion of the Court:

Tyler B. Dunlap recovered a judgment in two actions (which were consolidated for trial) against Maryland Casualty Company in the sum of Thirty-seven Hundred and Fifty Dollars, with interest, for past due and accrued indemnity benefits.

The policy sued upon provides for the payment to the insured in case of accident resulting in total and permanent disability a weekly indemnity of $75.00 during the period of such disability, and includes the following provisions:

"Total Disability: A. Or, if such injuries, directly and independently of all other causes, shall within twenty days from the date of accident, wholly and continuously disable the insured and prevent him from performing any and every duty pertaining to his occupation, the company will pay weekly indemnity at the rate hereinbefore specified for the period of such continuous total disability, but not exceeding fifty two consecutive weeks. After the payment of weekly indemnity for fifty two weeks as aforesaid the company will continue the payment of weekly indemnity of the same amount thereafter so long as the insured shall be wholly and continuously disabled by such bodily injuries from engaging in any occupation or employment for wage or profit.

"Partial Disability. B. Or, if such injuries, directly and independently of all other causes, shall, within twenty days from the date of accident or immediately following a period of total disability covered under Section A, continuously disable and prevent the Insured from performing one or more important daily duties pertaining to his occupation, the company will pay for the period of such disability, but not exceeding twenty-six consecutive weeks, a weekly indemnity of two-fifths of the amount payable for total disability."

The plaintiff alleged that while the policy was in full force and effect, he suffered an injury, on August 1, 1940, to his right hand, resulting in total disability under the provisions of the policy. He furnished due proof of the accidental injury to the insurer, following which the company paid him disability benefits at the rate of $75.00 per week up to and including August 1, 1941 ( which marked the end of the 52-week period), after which the company refused to make further payments on this basis.

The insurance company defended upon the ground that it had completely discharged its liability to the plaintiff under the terms of the policy by the payment of benefits over a period of 52 weeks for total disability in his occupation, and made a tender to him of the benefits provided for under the partial disability clause for an additional period of 26 consecutive weeks, which tender was refused.

The Court overruled a motion of the defendant for a directed verdict in its favor, submitted the case to the jury, and this appeal followed.

The right of the plaintiff to recover in this case depends upon the interpretation of the language of the contract describing the extent of the liability which he must suffer as a result of the injury, and what would constitute total disability within the meaning of the policy. All contentions made by the defendant, except one, relate to the meaning and effect of the clause we have quoted.

Indemnity insurance of the kind now before us' falls into two general classes; the first may be termed occupational, and the second, general. By the first clause quoted, the company undertakes specifically to insure only against total disability to perform the duties pertaining to the insured's particular occupation; and in the event of such continuous total disability, to pay a weekly indemnity for a period not exceeding 52 consecutive weeks. The second clause undertakes to insure against disability after the expiration of the 52-week period, so long as the insured is unable to engage "in any occupation or employment for wage or profit."

We are concerned here with the interpretation of this latter provision of the policy, in the light of the whole contract, and with the application of such construction to the facts of the case. Under the testimony, it is clear that the insured by reason of his injury suffered a continuous total disability which wholly prevented him from performing the duties of his usual occupation, so that we need not single out for discussion that feature of the indemnity provision.

The defendant contends that it is only when the insured can engage in no occupation or employment for wage or profit that he can continue indefinitely to draw the weekly benefit, and that the burden is upon him to show this.

A further consideration advanced by the defendant is that subsequent to the date of the accidental injury the plaintiff had actually been engaged in a gainful employment, other than his regular profession, with which he is familiar and from which he derived a substantial income, which precludes him from recovering under the provisions of the policy. A review of the facts will throw light upon the issues to be discussed.

The plaintiff was a dentist, and at the time of his injury had practiced his profession in the City of Sumter continuously for ten years. When this case was tried, in 1942, he was 37 years of age. He had received a college education, and later graduated in dentistry from the Atlanta Dental

College. About ten years before he suffered the total disability claimed, the plaintiff purchased a tract of land in Sumter County, containing about 247 acres, on which he planted 20,000 peach trees, but many of them had died. Upon this land he built what is described as a large house, a tenant house, a stable, and a packing house. A few years later, the plaintiff became the owner of 57 acres of land upon which a small amount of corn and cotton, and perhaps other crops, were planted. Four families reside on these places. The plaintiff also owns an automobile, a tractor, a peach grader, other farm equipment, two mules and a horse. He also owns what is referred to as a nice home in the City of Sumter.

While showing a Negro boy at the peach orchard how to grease a cogwheel in a peach grader, plaintiff's right hand was severely crushed, resulting in broken bones, which, according to the medical testimony, left the hand reduced in strength and feeling, and with some deformity, permanently disabling him in the practice of dentistry. Dr. Dunlap is right-handed, and the professional testimony shows a functional disability in that hand from 35% to 50% following the injury. The plaintiff testified that he attempted to continue the practice of his profession, but on account of the injury he found it to be impossible; that he tried to enter the army as a dentist, on his reserve commission, but was rejected, even for limited duty. He further stated that he was solely dependent for his livelihood upon the practice of his profession; and that throughout the years while he was so engaged he visited his peach farm, which was in charge of a Negro foreman, once or twice a week. That he regarded the peach orchard as a mere recreative pursuit and diversion, and that while he received some income from the sale of peaches, the source of his livelihood was the practice of his profession.

Upon cross examination of the plaintiff it was shown that during the peach season which opened in June, 1942, the plaintiff, according to his testimony, received a gross amount

of about $2,000.00 from the sale of peaches. It must be rec-. ognized, however, that from this amount there should be deducted taxes, upkeep (including necessary mechanical equipment), the foreman's wages of $5.50 per week, expense of spraying, cultivating, harvesting, crating and perhaps other expenses. Plaintiff likewise received $20 per month as rental for his dental tools and office equipment. This latter figure, however, cannot be deemed wage or profit under the policy. Nor can a certain amount received by the plaintiff from the sale of timber from his land be considered wage or profit from any occupation or employment under the policy provisions.

It was shown that during the peach season of 1942 there were deposited to plaintiff's account in two banks in the City of Sumter amounts aggregating $6,200.00. The plaintiff testified, however, that this amount was made up in part from funds constituting indemnity benefits received by him from other insurance companies; from amounts received from his peach crop; and that the deposits in the two banks were likewise made up of withdrawals and redeposits of the same money, some of which were accommodation loans, without interest, made by him to friends.

The plaintiff testified that he realized from the active practice of his profession more than $500.00 per month, which amount was in excess of the total received by him on account of indemnity benefits from insurance companies including the defendant company. He admitted that he filed with the City Clerk of Sumter during several years prior to his injury, applications for license permits as a basis for engaging in his profession, and for tax purposes, which showed from $1,800.00 to $2,200.00 gross annual income derived by him from the practice of his profession.

There are two lines of authority relating to cases of this character involving similar policy provisions; one tending to literalism, and the other applying the principle of liberal construction. We have uniformly adopted the principle of

liberal construction, as is shown in numerous cases decided by this Court.

We held in *McCutchen v. Pacific Mut. Life Ins. Co.*, 153 S. C., 401, 151 S. E., 67, that under a policy insuring against "permanent total disability," defined therein as disability caused by injury or disease which totally and permanently prevents insured from performing any work or engaging in any occupation or profession for compensation or profit, it is not necessary that the insured be wholly prevented from performing any work or engaging in any gainful occupation in order to be eligible for indemnity benefits.

The "total disability" contemplated by an accident policy does not mean, as its literal construction would require, a state of absolute helplessness; but rather, that the disability means inability to do all the substantial and material acts necessary to the prosecution of the insured's occupation or any business or occupation in a customary and usual manner; the words "total disability" have always been taken in their relative sense.

Counsel for the defendant contend that the evidence definitely establishes that the plaintiff has been and is now engaged in the occupation or employment of operating a peach orchard, and that he is as a matter of law not disabled within the terms of the policy, inasmuch as he is able to carry on a regular occupation, and is actually so doing.

Under this policy, any reasonable person would have expected substantial protection, and would never have thought of the disability insured against as one which must incapacitate him to earn the smallest sum in any possible manner. The clause "engage in any occupation or employment for wage or profit" should not be construed in the sense of any kind of occupation or employment, however insignificant or small the remuneration might be. We think the expressions "any occupation" and "any employment" should be considered to mean the usual employment of the particular person insured, or such other employment, if any, reason-

ably approximating the same livelihood, as the insured might fairly be expected to follow in view of his station, circumstances, training, aptitude and physical and mental capabilities. This construction finds support in the following cases: *Moyle v. Mutual Life Ins. Co.*, 201 S. C., 146, 21 S E. (2d), 561; *Long v. Mutual Life Ins. Co. of New York*, 197 S. C., 492, 15 S. E. (2d), 761; *Prudential Ins. Co. of America v. South*, 179 Ga., 653, 177 S. E., 499, 98, A. L. R., 781; *Keith v. Chicago, etc., R. Co.*, 82 Neb., 12, 116 N. W., 957, 23 L. R. A. (N. S.), 352, 130 Am. St. Rep., 655; *Industrial Mut. Indemnity Co. v. Hawkins*, 94 Ark., 417, 127 S. W., 457, 29, L. R. A. (N. S.), 635, 21 Ann. Cas., 1029.

The plaintiff, at the time he received the insurance policy from the defendant, was actively and continuously engaged in the practice of his profession as a dentist, and it must be presumed that the company knew of this fact. Knowing this fact, it issued the policy and received a valuable consideration for which it agreed to confer a benefit, and it must be presumed that a substantial benefit was intended. It cannot reasonably have been supposed by the defendant that the insured, becoming totally disabled to pursue his profession, would receive no benefit from his policy if he could by manual labor earn some wage which would not in any way be comparable with the income earned by him in the practice of his profession prior to his injury. Obviously, some reasonable parity between the income derived from the usual occupation followed by the insured and the income received from following any other occupational employment subsequent to the disabling injury, was contemplated by the parties.

A policy of this kind cannot be held to be one of income insurance guaranteeing the insured against depreciation of his income on account of any injury; yet, if an insured is rendered incapable of continuing in his former occupation, but is able to perform some other work,

that work in our opinion must not only be an occupation or employment for which he is reasonably fitted, but must rationally approach the same livelihood and standard of living which he enjoyed prior to his injury. This in our opinion, is a reasonable construction of the policy provisions, and one which must have been in the minds of the parties.

The plaintiff would not be entitled to a recovery merely upon proof that he had lost the functional use of his right hand; but he may submit evidence that in the particular circumstances applicable to himself, the injury rendered him totally and permanently disabled within the meaning of the policy. In this case it cannot be held as a matter of law that the evidence was insufficient for this purpose.

It is true, as the evidence shows, that the plaintiff owns a peach orchard, and is deriving some income from it, but can it be said as a matter of law that an uncertain and variable income of $2,000.00 or less per year would reasonably approximate an income of $6,000.00 per year, which the plaintiff says he earned in his profession prior to the injury? We think not.

In the case of *Moyle v. Mutual Life Ins. Co.*, 201 S. C., 146, 21 S. E. (2d), 561, 566, the Court in an able opinion by Mr. Justice Baker posed this question: "Where, as the result of motions for a nonsuit and for a direction of verdict, it is to be taken as admitted that the insured is unable to perform all of the material acts incident to the adequate prosecution of a business for which he has special training and has followed for many years, but is nevertheless enabled, by reason of new professional or business skills or experience acquired by him, to perform the duties of a full-time job in a new field for compensation reasonably comparable with the amount of compensation formerly earned by him, can it be said that the insured is 'continuously and wholly prevented (by reason of his injury) thereby from performing any work for compensation, gain or profit and from following any gainful occupation?' "

In the *Moyle case,* the facts were widely different from the facts in the case at bar. The Court found it proper in that case to direct a verdict in favor of the insurance company, because the evidence showed as a matter of law that Mr. Moyle had by training and experience acquired "new professional or business skills" which enabled him to fully perform the duties of a position in a new field for which he was well equipped, and for which he received a substantial salary. In this new line of work it was shown that while Mr. Moyle did not receive a remuneration which was the exact equivalent of that earned by him prior to his injury, it could be said that such remuneration was reasonably comparable.

In *Long v. Mutual Life Ins. Co. of New York,* 197 S. C., 492, 15 S. E. (2d), 761, the Court held, in considering a policy similar to this, that in determining whether an insured is entitled to total and permanent disability benefits provided for in a life insurance policy, consideration must be given to the insured's financial return, the amount of time the insured is physically able to give to his work, and the insured's efficiency, determined by his physical or mental ability, as the case may be.

It is suggested in argument that if the plaintiff would devote more time to the operation of his peach orchard he would probably derive a larger income therefrom. But it should be borne in mind that, as shown by the record, the plaintiff's only experience in peach growing was gained from what he regarded as a recreational pursuit, and if, since his injury, he has been unable through lack of efficiency, training, experience, or mental aptitude to derive from his peach orchard a larger amount, this was a question for the jury's determination. It was also for the jury to determine if, during the peach season of 1942, the plaintiff actually received more than $2,000.00 or less from the sale of peaches.

In our opinion, the lower Court committed no error in refusing to direct a verdict for the defendant.

The only other question presented by the appeal has to do with whether the trial Judge confused the jury in giving his instructions. It is contended that the Judge charged the jury not only the construction of the contract urged by the plaintiff, but also that construction contended for by the defendant. And it is said that the two are entirely inconsistent. There is some basis for the contention that the instructions are somewhat inconsistent, but such inconsistency was altogether in favor of the defendant. The defendant requested the Court to charge certain principles of law which were charged, but which were more favorable to the defendant than it was entitled to. For instance, the Court charged, at the request of the defendant, the literal wording of the policy provision, as follows: "I charge you that unless you believe the plaintiff is wholly and continuously disabled by the injuries referred to in the complaint from engaging in any occupation or employment for wage or profit, then your verdict must be for the defendant." And further charged: "I charge you that if the plaintiff is capable of managing a business, clerking in a store, selling fire insurance, or engaging in any of the numberless occupations in the business world or in the world of employment, for wage or profit, then your verdict must be for the defendant."

These instructions, standing alone, went too far. They overlooked the liberal construction given by this Court to policies of this kind, but we do not think the defendant is in any position to complain.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, concur.

On Petition for Rehearing.

PER CURIAM.

The Court has carefully considered the grounds set forth in the petition for rehearing, none of which were overlooked in the preparation of the opinion. Upon a re-examination of

the questions involved, we adhere to our previously announced decision.

The opinion in this case is not intended to preclude the appellant from instituting an action at a later date to have it judicially declared that the respondent is then not wholly and continuously disabled by reason of his injury from engaging in any occupation or employment for wage or profit reasonably comparable to his previous earnings.

Let this order be reported with the opinion.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE, and STUKES, and CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, concur.