15734

BLACKWELL v. PRUDENTIAL INSURANCE COMPANY OF AMERICA

(34 S. E. (2d), 57)

*Messrs. Osborne, Butler & Moore,* of Spartanburg, S. C., Counsel for Appellant-Respondent,

*Mr. Sam R. Watt* and *Mr. Bruce Littlejohn,* both of Spartanburg, S. C., Counsel for Respondent-Appellant, 

Counsel for Appellant-Respondent, in Reply, 

Counsel for Respondent-Appellant, *Mr. Sam R. Watt* and *Mr. Bruce Littlejohn,* made Reply Argument.

May 11, 1945.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court:

This is an action to recover certain disability benefits under a policy of life insurance issued by defendant, Prudential Insurance Company of America, to plaintiff, John F. Blackwell, on June 20, 1931. The policy was written as a part of a group insurance policy covering certain employees of the Whitney Manufacturing Company, a corporation engaged in the manufacture of textile products and located in Spartanburg County. The disability clauses of the policy provided for the waiver of premiums and the payment of a certain amount to the insured in the event that he became totally and permanently disabled before reaching sixty years

of age. Plaintiff alleged that he became so disabled some time prior to December 19, 1941. The only defense interposed on this appeal was a denial that plaintiff was totally and permanently disabled. At appropriate stages of the trial, defendant duly made motions for a nonsuit and a directed verdict, which were refused by the trial Judge and the case submitted to the jury, resulting in a verdict for plaintiff. Defendant thereupon made a motion for judgment *non obstante veredicto* and failing in that, for a new trial. The Court refused the motion for judgment *non obstante veredicto,* but granted a new trial on the ground that the charge "was so contradictory that the jury could easily have been befuddled." Both parties have appealed, plaintiff from that portion of the order granting a new trial and defendant from that portion of the order refusing its motion for judgment *non obstante veredicto.* We shall first consider defendant's appeal.

Plaintiff is 58 years of age, was born on a farm in Spartanburg County, only acquired a fifth grade education, and has been engaged in textile work for more than 25 years. Before working for the Whitney Manufacturing Company, he was an assistant overseer at several textile plants. About 1925 he commenced his employment with the Whitney Manufacturing Company. For the first two years he was assistant overseer in the cloth room. In 1927 he was advanced to the position of overseer and continued in this capacity for a period of eleven years. In October, 1938, he was compelled on account of ill health to relinquish his work as overseer. After remaining in a hospital for about two weeks, he then secured employment in the mill store of Whitney Manufacturing Company and this employment continued from October, 1938, to June, 1940. During the summer of 1940 he was an unsuccessful candidate for coroner of Spartanburg County. In November, 1940, he again entered the employment of the Whitney Manufacturing Company in the capacity of assistant overseer. This employment con-

tinued until Juy, 1941, when the condition of his health necessitated his discontinuing all work. He did no further work until March, 1942, when he secured employment with the Whitney Manufacturing Company as a gatekeeper and was so engaged when this case was tried in May, 1943.

The family physician of insured testified that he has continuously treated him since about 1936, which was about two years before he was compelled to give up his work as overseer. It appears from the diagnosis of this physician that insured is suffering from a fallen stomach (gastroptosis). This physician testified that the health of insured has been bad since 1936; that the condition of his stomach causes pain and extreme nervousness, which is aggravated by any physical exertion; that his disability is permanent; and that he will never be able to engage in any work requiring much physical exertion or involving mental strain.

Counsel for defendant state in their brief "that the contention is not made that the insured is capable of carrying on his old occupation." It is the primary contention of the defendant on this appeal that the undisputed evidence shows that the plaintiff at the time when he claims he became disabled was engaged, and since has been continuously so engaged, in a new field of employment with compensation reasonably comparable with that formerly earned by him and that the new employment is such "as the insured might fairly be expected to follow in view of his station, circumstances, training, aptitude and physical and mental capabilities." In other words, counsel for defendant assert that the new employment of assured as gatekeeper is one for which he is fitted and that the earnings from same reasonably approximate those received in his former employment. On this ground it is urged that the Court below erred in not directing a verdict for the defendant. In support of this contention, defendant's counsel say that this case is governed by the legal principles enunciated in the cases of

*Moyle v. Mutual Life Insurance Co. of N. Y.*, 201 S. C., 146, 21 S. E. (2d), 561 and *Dunlap v. Maryland Casualty Co.*, 203 S. C., 1, 25 S. E. (2d), 881, 149 A. L. R., 1. (Attention is called to the extensive annotation of the *Dunlap case*, beginning on page 7 of 149 A. L. R., where the cases bearing on all phases of the subject of disability insurance are ably reviewed.)

It was held in the *Moyle case* (201 S. C., 146, 21 S. E. (2d), 566) that where "the insured is unable to perform all the material acts incident to the adequate prosecution of a business for which he has special training and has followed for many years, but is nevertheless enabled, by reason of new professional or business skills or experience acquired by him, to perform the duties of a full time job in a new field for compensation reasonably comparable with the amount of compensation formerly earned by him," he is not totally and permanently disabled within the contemplation of the usual disability provisions of a policy.

In construing a disability clause similar to the one involved in the instant case, this Court in the *Dunlap case* (203 S. C., 1, 25 S. E. (2d), 884) said: "The clause 'engage in any occupation or employment for wage or profit' should not be construed in the sense of any kind of occupation or employment, however insignificant or small the remuneration might me. We think the expressions 'any occupation' and 'any employment' should be considered to mean the usual employment of the particular person insured, or such other employment, if any, reasonably approximating the same livelihood, as the insured might fairly be expected to follow in view of his station, circumstances, training, aptitude and physical and mental capabilities." The Court further stated: "A policy of this kind cannot be held to be one of income insurance, guaranteeing the insured against depreciation of his income on account of

any injury; yet, if an insured is rendered incapable of continuing in his former occupation, but is able to perform some other work, that work in our opinion must not only be an occupation or employment for which he is reasnably fitted, but must rationally approach the same livelihood and standard of living which he enjoyed prior to his injury."

With the foregoing principles in mind, we will now proceed to examine the nature and character of plaintiff's old and new employment and compare the earnings received. The evidence abundantly shows that the only special training which the plaintiff had was in textile work. Through diligent application to his work, plaintiff had advanced to the position of overseer of the cloth room. The secretary and assistant treasurer of the Whitney Manufacturing Company testified that experience of from five to ten years is required in order for one to qualify as an overseer, who is regarded as more or less of an executive. An overseer is paid a straight salary and no deduction is made if he is absent for a reasonable length of time on account of illness or other good cause. The record does not clearly disclose the earnings of the plaintiff prior to 1937. The mill records show that as overseer, from January, 1937, to October, 1938, the plaintiff earned from $35.00 to $40.00 per week. At the time of the trial the overseer who succeeded the plaintiff was receiving $50.00 per week. The plaintiff's work as overseer was entirely satisfactory and if he had not been prevented from doing so by illness, no reason appears why he could not have continued in this capacity. From October, 1938, to June, 1940, while working in the mill store, the plaintiffs received $60.00 per month, or less than half of his previous earnings. From November, 1940, to July, 1941, he received as assistant overseer from $16.00 to $19.00 a week, or approximately half which he earned as overseer. It is conceded that there is sufficient evidence to show that he is unable to carry on this work.

Turning now to the new employment, it appears that the job of gatekeeper or watchman was created by the war emergency. The mill did not maintain a gatekeeper until about 1942, or shortly after hostilities were commenced. At that time a fence was constructed around the mill for the purpose of protecting the mill property and keeping out all persons except employees or others having legitimate business on the premises. Gatekeepers were employed so as to prevent anyone entering the premises without a pass. Very little physical or mental effort is required to hold this job. No previous experience or training is necessary. During the greater portion of the time the gatekeeper sits in a chair. He is paid by the hour and any time lost is deducted from his wages. From March, 1942, to the time of the trial plaintiff received as gatekeeper from $20.80 to $24.70 per week, or approximately half what he would have earned had he been able to retain his position as overseer. The superintendent was asked whether the position of gatekeeper would be continued after the war, to which he replied "I could not say."

There is testimony that the plaintiff still continues to suffer pain and is extremely nervous. However, the undisputed evidence shows that for approximately a year prior to the trial of the case he regularly discharged the duties of gatekeeper in a satisfactory manner. In view of this undisputed work record, it must be held that he is able to perform the duties of this job. *Owens v. Woodmen of the World,* 174 S. C., 514, 178 S. E., 125; *Stewart v. Pioneer Pyramid Life Insurance Co.,* 177 S. C., 132, 180 S. E., 889.

It is impossible to set up an absolute or inflexible definition as to what type of work the insured might be permitted to do without losing the benefits of an insurance policy of this kind, but each case must be considered with reference to the particular situation involved. The Courts can only lay down certain general principles, as

was done in *Dunlap v. Maryland Casualty Co., supra,* but difficulty will frequently arise in their application to the circumstances of a particular case. We do not think the insured's new work in the instant case meets the requirements outlined in the *Dunlap case.* Insured's old occupation was one in which he had received years of training and upon which he could rely to a substantial degree for a livelihood. In this work he had been able to educate his three daughters at Converse College. On account of his impaired physical condition, he is now only able to do work of a very restricted type, such as that which he is now doing, which requires no training and little physical or mental effort. We do not think it can be said as a matter of law that the job of gatekeeper is such "as the insured might fairly be expected to follow in view of his station, circumstances, training, aptitude and physical and mental capabilities," or that in this work he can "rationally approach the same livelihood and standard of living which he enjoyed" prior to his incapacity. He is now earning only approximately half of that which he would be earning if he had been able to continue as overseer.

The instant case is readily distinguishable from that of *Moyle v. Mutual Life Insurance Co., supra.* Here the insured has acquired no "new professional or business skills or experience," as was done in the *Moyle case.* In that case the new occupation of insured was one in keeping with his "station, circumstances," and "mental capabilities," and at which he earned from $3,000.00 to $3,600.00 a year as against approximately $4,600.00 earned prior to his injury.

The factual situation here is very similar to that found in *Davis v. Metropolitan Life Insurance Co.,* 164 S. C., 444, 162 S. E., 429, in which recovery of total and permanent disability benefits was allowed where the claimant by reason of an accident was unable to pursue his old occupation as check clerk for an express company, although

employed after his injury as a night watchman for a college at $60.00 per month.

It is suggested by defendant's counsel that in applying the rule of comparative earnings, the present earnings of the plaintiff should be compared with those received in his old occupation on December 19, 1941, or "only a reasonably short time before" that date. It is said that the plaintiff "planted himself upon a disability as of December 19, 1941." On this theory, defendant contends that the trial Judge erred in admitting evidence of plaintiff's physical condition, earnings and position held in 1937 and 1938, and that he also erred in admitting evidence of the salary paid an overseer at the time of the trial.

It is alleged in the complaint that over a period of years "plaintiff developed a bad physical condition which continued to grow worse, but that the plaintiff endeavored to keep going and to perform his work as best he could. However, plaintiff's condition became such that some time before December 19, 1941, his health became so impaired that he became totally and permanently disabled" and "that such disability has continued uninterruptedly since said time." Under the foregoing allegations, we think the testimony complained of was competent. As stated by the trial Judge, except in cases of accidental injury, the usual case of disability is a progressive one. Ordinarily a person does not become totally and permanently disabled overnight. It is frequently difficult to fix an exact date when disability has reached the point of being total. Such was the case here. In determining the previous earnings of the plaintiff, we must look to that period when he possessed his full earning capacity, which under the evidence he did not have after October, 1938. There is abundant evidence showing that his reduced earnings beginning at that time were brought about by his impaired physical condition. Nor do we think there was any error in allowing testimony as to the

remuneration received by an overseer during the period of plaintiff's work as gatekeeper. To determine the reduced earning capacity of plaintiff on account of his disability, his earnings as gatekeeper should be compared with those which, except for his disability, he would reasonably have earned in his old occupation during the same period of time. We may take judicial notice of the progressive increase in the scale of wages during recent years. We will not pretend to be ignorant of that which is a matter of common knowledge. It would be grossly inequitable to determine plaintiff's present earnings under the wage scale now prevailing and fix his earnings in his old occupation at a time when the wage scale was much lower.

The cases cited by defendant's counsel to the effect that one cannot recover for a period of disability different from that alleged in the complaint or extending beyond the time of the commencement of the action, are not applicable. Plaintiff is not seeking in this case to recover for any disability occurring in 1937 and 1938, nor is he seeking to recover disability benefits for a period other than that alleged in the complaint.

We shall next consider the exceptions of plaintiff to that portion of the order granting a new trial. The defendant contended on its motion for a new trial that the trial Judge charged inapplicable principles, principles that were inconsistent with other portions of the charge, and as a result the whole charge was confusing and misleading. The view was sustained by the trial Judge and a new trial granted on this ground.

The alleged inapplicable and inconsistent instructions are contained in the requests to charge. At the request of the plaintiff, the Court charged that an insured is deemed totally disabled "when he is no longer able to do his accustomed task, and such work as he has only been trained to do, and upon which he must depend for a living," and that

"total disability contemplated by contracts of insurance is inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner." At the request of the defendant, the Court charged that "even though you may find the plaintiff, since the date of his alleged disability, has been unable to perform all the material acts necessary to the prosecution of his former business or occupation, in substantially his customary and usual manner, but you also find that such former business or occupation is not the only work that he has been or is trained to do and not the only work which he has been or is depending for a living, and the plaintiff is physically and mentally able to engage in such other business or occupation, then the plaintiff is not totally disabled." There were several other requests of the defendant to the same general effect which were charged.

Defendant contends that the rule announced in plaintiff's requests was inapplicable because there was never any contention on the part of the defendant that plaintiff was able to carry on his former occupation in substantially his customary manner. But the record fails to show that this concession was made during the trial of the case. The answer contained an unqualified denial that plaintiff was totally and permanently disabled. Considerable testimony was taken to show that plaintiff was unable to carry on the work of his former occupation, all of which was unnecessary if defendant intended not to contest this phase of the matter. Under the pleadings and testimony, this was an issue which it was proper to submit to the jury. Moreover, if this question was no longer an issue in the case, that fact should have been called to the attention of the Court. Otherwise, any objection thereto is waived. *Coleman v. Lurey*, 199 S. C., 442, 20 S. E. (2d), 65; *Werts v. Greenwood County*, 205 S. C., 258, 31 S. E. (2d), 451.

Nor are we able to see any inconsistency in the principles stated in the requests to charge by the respective parties. Under the cases of *Kiser v. W. O. W.*, 192 S. C., 465, 7 S. E. (2d), 220; *Moyle v. Mutual Life Insurance Co. of New York, supra; Dunlap v. Maryland Casualty Co., supra,* the first inquiry was whether plaintiff was able to perform all of the material acts of his former occupation in substantially his customary and usual manner. If the jury found that he was able to do so, he was not totally disabled. If the jury found that he was not able to do so, then he was totally disabled with respect to performance of the duties of his old occupation, and the next inquiry would be whether he was able to perform some other work for which he was "reasonably fitted" and which "rationally" approached "the same livelihood and standard of living which he enjoyed prior to his injury" or physical impairment. In the absence of any concession by defendant that the first question was not contested, it was proper to submit both phases of the matter to the jury, as was done by the trial Judge.

The only confusion in the charge was principally brought about by defendant's request No. 3. In this request the jury was charged that the evidence showed that the plaintiff was not then engaged in his former occupation and that under the evidence "you are not concerned with whether the insured is disabled from performing the duties of his former occuation, but on the contrary whether he has been engaged, since the date of the onset of his alleged disability, in a gainful occupation." (This request was modified in certain particulars not material to this discussion.) If counsel for defendant intended by this request to concede that the plaintiff was unable to follow his former occupation, he should have clearly so stated and not done so by a vague implication. The plaintiff's ability to carry on his former occupation was a matter with which

the jury was concerned in the absence of an admission by
defendant of his inability to do so. The defendant is, there-
fore, not in a position to complain of any confusion inad-
vertently brought about by this request.

We may add that the charge would probably have
been clearer if the Court had stated together all the
elements entering into the question of total and per-
manent disability and not undertaken to consider them sep-
arately. The definition in the *Dunlap case* could well have
been followed, but neither in the general charge nor in
plaintiff's requests are there any "erroneous directions." If
any elaboration on the questions involved was desired, coun-
sel should have brought the matter to the attention of the
Court. *Coleman v. Lurey, supra.*

It is the judgment of this Court that the trial Judge com-
mitted no error in refusing to grant the motion for judg-
ment *non obstante veredicto,* but was in error in granting
a new trial. The case is remanded to the lower Court for en-
try of judgment in accordance with the verdict of the jury.

Mr. Chief Justice Baker and Messrs. Associate Jus-
tices Fishburne and Stukes concur.