16499

GOUDELOCK v. PRUDENTIAL INS. CO. OF AMERICA

(65 S. E. (2d) 114)

*Messrs. McCants & McCants,* of Columbia, *for Appellant,*

*Messrs. Wise, Whaley & McCutchen,* of Columbia, *for Respondent,*

May 9, 1951.

FISHBURNE, Justice.

In May, 1926, the appellant, The Prudential Insurance Company of America, issued to the respondent a $5,000.00 life insurance policy which contains a total and permanent disability clause providing for payment to the insured of a $50.00 monthly income, and also for the waiver of the annual premium in the event he becomes "totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she ) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime * * *." It was provided that the foregoing provision should take effect in the event of total and permanent disability before the age of sixty years.

For many years prior to the issuance of the policy, respondent was a licensed pharmacist, and followed this profession until 1931. From 1929 to 1937 he served as adjutant of the American Legion of South Carolina, and as such traveled over the entire state. In pursuance of his duties, he arranged various programs and made many speeches. He continued this work until 1937, when he was employed

by the Veterans Employment Service, which likewise necessitated extensive traveling throughout South Carolina for the purpose of promoting the employment of veterans. In this connection he interviewed many prospective employers, and attended numerous meetings at which he spoke on behalf of the veterans.

On October 26, 1946, while still with the Employment Service, respondent sustained an acute coronary occlusion, and hovered between life and death for several days, in the Veterans Hospital in Columbia. As a result of this heart attack, he lay flat on his back in a hospital bed for seven weeks, and was not allowed to raise his head; he was confined to his home thereafter for an additional period of two months. While at home, he stayed in bed much of the time, and lounged around the house. After some time he succeeded in walking fifty feet, and continued this exercise in an effort to regain his strength, until he was able to walk around a block.

About March 1, 1947, in order to support his family, he returned to work with the Veterans Employment Service. He testified that from the time he resumed this occupation, in March, 1947, and until October, 1947, his physical condition became worse. On October 15, 1947, he left this employment. He stated that he could not perform all of the duties, and at times, "I frequently couldn't make a long sentence;" and could not carry on his work in the usual and accustomed manner on account of the stress and strain. He said his breath became short, and he could do less and less work.

When respondent severed his connection with the Veterans Employment Service, he had no other job, and no prospect of earning a livelihood; nor was he trained or specially fitted for other work except that of a pharmacist, which he had long since had to discontinue and which would have been unavailable to him because of his physical condition.

Some months later, he secured employment as a soliciting agent with the Colonial Life and Accident Insurance Company, and at the time of the trial of this case he was still so engaged.

This action was brought against appellant to recover the disability payments provided for in that clause of the policy. He alleged that while the policy was in full force and effect he became totally and permanently disabled, which disability has continued uninterrupted, and which will, as he is informed and believes, remain permanent.

Appellant filed its answer in which it admitted that' the policy was a subsisting contract, but denied the material allegations of the complaint relating to total disability; specifically denied that the disability was in the purview of the terms of the policy or within the definition of disability as interpreted by this court.

The case was tried before a jury and resulted in a verdict in favor of the respondent. The trial court overruled motions for a nonsuit and for the direction of a verdict, made by appellant, and likewise denied its motion for judgment notwithstanding the verdict.

Appellant contends that the evidence adduced on the trial of the case is capable of but one reasonable inference, and that is, that respondent, following his heart attack, and since March, 1947, was continuously and actively engaged in employment for which he was well fitted, and from which he derived a substantial income, resulting in the same livelihood and standard of living which he enjoyed prior to his illness. In effect, it is argued that respondent has suffered no total disability, but is now an active and successful insurance salesman.

The evidence offered by respondent tends to show facts and circumstances which in our opinion sustain the orders of the trial court, and which warranted the submission of the issues made by the pleadings to the jury. A situation is not presented here which would justify us in declaring as a

matter of law that respondent suffered no total disability as provided in the terms of the policy.

When, the latter part of 1947 or the first part of 1948, respondent obtained employment with the Colonial Life & Accident Insurance Company as a soliciting salesman, he was completely without experience or training of any kind in this line of work. He commenced as a mere beginner in the attempted performance of the new duties, in order to earn a living.

It is not contradicted that the respondent was in good health prior to his heart attack, in 1946; he had had no previous trouble with his heart, and his work never fatigued him.

Dr. Zimmerman, Chief of the Medical Service of the Veterans Hospital, and the only certified cardiologist in the state, testified for the respondent. He gave it as his opinion that the respondent is totally and permanently disabled. He attended him while he was a patient in the Veterans Hospital, and stated that respondent's "underlying abnormality is a progressive one," with an ultimate prognosis of death; that between 75 and 80 per cent. of the individuals who have a coronary thrombosis, with an extensive injury as Mr. Goudelock had, will die in five years. He said that it would be detrimental to him to do anything which would require a definite or strict routine; that he should rest two or three hours each afternoon and do no step climbing; that the mileage he covered as an insurance agent was definitely prejudicial to his health, and would shorten his life.

The personal physician of respondent, Dr. Ben Miller, testified that from time to time since his heart attack, respondent had to go to bed for a week or more at a time; and, speaking from his experience, he stated that in his opinion, respondent since his major attack, has suffered several minor coronary occlusions.

Appellant stresses and emphasizes in its brief that respondent in his automobile, as an employee of the insurance

company, travels over the state much as he did when working with the American Legion and the Veterans Employment Service, but the evidence indicates a situation to the contrary.

The reasonable inference may be drawn, that respondent's ability to expend physical and mental effort is much reduced as compared with what it was prior to his illness. Respondent stated that he can devote only three or four hours a day about three and a half days a week to his work; that he can solicit no insurance in a building except on the first floor unless such building is provided with an elevator, because he cannot climb stairs or do much walking. He works a few hours in the morning, and regardless of where he might be, he registers at a hotel and goes to bed for an hour or two each afternoon to rest. This he does every day. He states that he does this because he is afraid of what might happen to him. And he said that many times he is not able to work at all; and that if he were in good physical condition he could earn two or three times as much as he now earns in selling insurance.

The evidence tends to show that respondent necessarily avoids any rigid routine because of its stress and strain. And he has never been able to pursue this insurance business on what might be called a full time basis. It appears, too, that respondent, a lover of sports has not been able since his first heart attack in 1946 to participate in any sport as spectator or otherwise, such, for instance, as attending a football game, where the excitement engendered might prove detrimental.

In our opinion, the foregoing review of the evidence gives rise to the clear inference that respondent is not engaged in, nor is he able to follow the same type of work in which he was employed prior to his illness; and that if he abides by the advice of his physicians he would not attempt to solicit insurance or engage in any work which would tax his physical strength.

Nor in our opinion does the evidence show as a matter of law that respondent derives an income as a soliciting insurance agent, reasonably comparable with what he made or could have made in his employment with the Veterans Employment Service.

It was stated in *Dunlap v. Maryland Casuolty Co.,* 203 S. C. 1, 25 S. E. (2d) 881, 884, 149 A. L. R. 1: "A policy of this kind cannot be held to be one of income insurance, guaranteeing the insured against depreciation of his income on account of any injury; yet, if an insured is rendered incapable of continuing in his former occupation, but is able to perform some other work, that work in our opinion must not only be an occupation or employment for which he is reasonably fitted, but must rationally approach the same livelihood and standard of living which he enjoyed prior to his injury. This in our opinion, is a reasonable construction of the policy provisions, and one which must have been in the minds of the parties." See Annotations, 149 A. L. R. 7; 153 A. L. R. 430; 98 A. L. R. 788.

And to the same effect is *Blackwell v. Prudential Ins. Co. of America,* 206 S. C. 320, 34 S. E. (2d) 57.

It was held in *Moyle v. Mutual Life Ins. Co. of New York,* 201 S. C. 146, 21 S. E. (2d) 561, 566, that where "the insured is unable to perform all of the material acts incident to the adequate prosecution of a business for which he has special training and has followed for many years, but is nevertheless enabled, by reason of new professional or business skills or experience acquired by him, to perform the duties of a full time job in a new field for compensation reasonably comparable with the amount of compensation formerly earned by him," he is not totally and permanently disabled within the contemplation of the usual disability provisions of a policy.

We will not undertake to state in detail the testimony covering the income derived by the respondent from his present

employer, and that which he received from the Veterans Employment Service. It cannot be said as a matter of law from a consideration of this evidence that respondent's present uncertain income rationally approaches or is reasonably comparable with the amount of compensation formerly earned by him. While it is true that he has, against the advice of his physicians and despite his physical disabilities, derived an income as an insurance salesman, the evidence negatives the conclusion that he is able, physically or mentally, to give this work his full time. The reasonable inference may be drawn that the respondent was forced to quit work with the Veterans Employment Service because of his heart condition, and that since he has been with the Insurance Company he had had to stop work many times in order to rest in bed at his home.

When respondent ceased his employment with the Veterans Employment Service in October, 1947, he was receiving a salary of $5,180.00 per year, plus $6.00 per diem, and in addition thereto 5¢ a mile travel allowance. In 1948, his net income from his present employment was $3,988.58; and in 1949, his net income was $3,359.98. If he had been physically able to remain with the Veterans Employment Service in 1949 he would have received a net salary of $6,-200.00, plus per diem of $7.50, and in addition thereto 7¢ per mile travel allowance. With the insurance company he receives no per diem or travel expenses. And in view of the foregoing figures we do not think that it can be said as a matter of law that his present income is reasonably comparable with the amount of compensation he formerly earned and could now be earning but for his disability. On the other hand, as shown by the figures, his net income is on the down grade.

Error is assigned because the court allowed respondent to testify as to what his future earnings would have been had he remained in the employment of the Veterans Employment Service. This question was decided

adversely to appellant in the case of *Blackwell v. Prudential Ins. Co. of America,* 206 S. C. 320, 34 S. E. (2d) 57, 61, where the court stated: "To determine the reduced earning capacity of plaintiff on account of his disability, his earnings as gatekeeper should be compared with those which, except for his disability, he would reasonably have earned in his old occupation during the same period of time." And the court went on to state that judicial notice would be taken of the progressive increase in the scale of wages during recent years.

In addition to this, the increase in the salary scale of respondent was brought out by appellant on cross examination. This similar testimony was elicited without reserving any objection, and under such circumstances became competent. *Smith v. Metropolitan Life Ins. Co.,* 191 S. C. 310, 4 S. E. (2d) 270; *Nock v. Fidelity & Deposit Co.,* 175 S. C. 188, 178 S. E. 829, 98 A. L. R. 757.

Error is assigned to the trial court because it refused to admit in evidence a letter offered by appellant showing the respondent's salary scale while an employee of the Veterans Employment Service. This letter was offered in evidence under the authority of Sec. 713 of the Code which provides for the introduction of certified copies of any instrument, document or other paper required or authorized by law to be recorded or kept on file.

Assuming without deciding that the introduction of this letter was admissible, the refusal of the court to admit it could in no way have prejudiced appellant, because respondent, on cross examination, testified substantially to what the letter contained. It was brought out that he received $5,180.00 for the year 1947 as salary, which is the last year he served with the Employment Service. The rejected document, which is in the record, shows that respondent was paid $5,152.80 as his salary for the year 1947. It is difficult to see how this small discrepancy in 1947 could have been prej-

udicial to appellant; and the exception raising this point is overruled.

Finally, error is charged because the trial judge refused to give the following instruction to the jury:

"I further charge you that if the evidence shows that such business or occupation of the plaintiff at the time of his alleged illness is not the only business or occupation that the plaintiff is able to do, and not the only work upon which he must depend for a living, and that if the evidence further shows that the plaintiff is physically able to engage in another business or occupation, then the plaintiff is not totally disabled, and that you must find for the defendant."

It is pointed out by appellant that the refused instruction is authorized by what the court said in *Kizer v. Sovereign Camp, W. O. W.,* 192 S. C. 465, 7 S. E. (2d) 220, 221. The requested instruction is only a portion of what the court had to say in the above case—a part of one sentence. It includes the language, "the only business or occupation that the plaintiff is able to do," while the words used by the court in the *Kizer case* are, "the only work that he has been trained to do." The omitted portion of the sentence above referred to, which is not included in the requested instruction, reads: "* * * but if such business or occupation is not the only work that he has been trained to do, and not the only work upon which he must depend for a living, and the insured is *physically and mentally* able to engage in such other business or occupation, then the insured is not totally disabled." (Emphasis added.)

The appellant's request to charge, as will be noted, uses the language, "if the evidence further shows that the plaintiff is physically able to engage in another business or occupation," while the *Kizer case* states "* * * and the insured is physically and mentally able to engage in such other business or occupation." The omission of the word "mentally" is significant, as contended by respondent, for it ignores the stress and strain of the work engaged in by the

respondent, including his inability to observe a routine, and the necessity for him to avoid all excitement.

We think no prejudicial error was committed by the court's refusal to give the requested instruction. The charge of the trial judge as a whole contains a full and correct statement of the law applicable to the issues presented on the trial.

Judgment affirmed.

STUKES, TAYLOR and OXNER, JJ., and L. D. LIDE, Acting Associate Justice, concur.