16805

ADAIR v. NEW YORK LIFE INS. CO.
(79 S. E. (2d) 316)

*Messrs. Haynsworth & Haynsworth,* of Greenville, *for Appellant,*

*Messrs. Blackwell, Sullivan & Wilson, for Respondent,*

December 8, 1953.

OXNER, Justice.

The question for determination is whether there is any evidence reasonably warranting the inference that Sam Y. Adair, the insured under four policies of life insurance issued by the New York Life Insurance Company, is totally disabled within the meaning of a clause contained in each policy, providing for waiver of premiums in the event the insured should become totally disabled by bodily injury or disease, so that he "is and will be thereby wholly prevented from performing any work, following any occupation, or engaging in any business for remuneration or profit."

The dates and amounts of the four policies are as follows: September 13, 1935, $1,000.00; August 26, 1941, $1,000.00; June 26, 1941, $2,000.00; and January 13, 1943, $5,000.00.

In 1935, when the first policy was issued, insured, then about 22 years of age, was a clerk in a drug store at Clinton, South Carolina. He continued this work until 1940, at which time he commenced selling ladies' hosiery on a commission basis. The hosiery was carried in his car and delivered at the time of sale. He covered a large territory and traveled extensively by automobile. By 1942, his commis-

sions amounted to approximately $4,800.00 a year. During that year, he began having trouble with his left foot which handicapped him in traveling and materially decreased his income. In 1944, after it developed that he had what is known as a madura foot, his left leg was amputated about ten inches below the knee and he was fitted with an artificial limb. Finally in 1949, he discontinued selling hosiery and commenced selling automobiles at Clinton, South Carolina.

During the spring of 1951, the insured and Richard L. Hull of Atlanta, Georgia, organized a corporation known as the Hull-Adair Chevrolet, Inc., with a capital stock of $30,000.00, which was given the Chevrolet agency for Morgan County, Georgia. The insured supplied $10,000.00, or one-third of the capital, and Hull the remainder. The former was named president and secretary and the latter vice-president and treasurer. In April, 1951, insured moved to Madison, Georgia, the county seat of Morgan County, and has since managed the affairs of this corporation. He is paid a monthly salary of $350.00. Hull, who lives in Atlanta, a distance of sixty miles from Madison, receives no salary. He has various business interests elsewhere and devotes very little time to the affairs of the Chevrolet agency. There are six employees of the corporation—two mechanics and a helper, a parts manager, a salesman and a bookkeeper, who is insured's wife. The business seems to have been rather successful. There was a net profit during the first year of around $12,000.00, but no dividend was declared.

The Insurance Company raises no question as to total disability prior to February, 1951, but has declined to waive payment of premiums since that date. This action was brought in March, 1952, to recover certain premiums paid on three of the policies during the summer and fall of 1951, together with interest thereon, and to require the Insurance Company to credit the insured with a payment of premium due on the fourth policy. The Company contends that the insured is no longer totally disabled because he is now en-

gaged in a new field of employment with compensation reasonably comparable with that formerly earned by him, and that the new employment is such as he "might fairly be expected to follow in view of his station, circumstances, training, aptitude and physical and mental capabilities." The insured denies that the salary now received rationally approaches his earnings prior to his disability, and further asserts that in his present occupation he is unable to perform all of the material acts necessary to the prosecution of this business in substantially the customary and usual manner.

On the trial of the case, the Court denied the insurer's motion for a nonsuit and later for a directed verdict, and submitted the question of total disability to the jury. There was a verdict for the insured and from the judgment entered thereon, the Insurance Company has appealed, contending that the undisputed evidence shows that the insured is not now totally disabled and that the Court below should have so held as a matter of law.

It was held in *Moyle v. Mutual Life Insurance Co. of N. Y.*, 201 S. C. 146, 21 S. E. (2d) 561, 566, that where "the insured is unable to perform all of the material acts incident to the adequate prosecution of a business for which he has special training and has followed for many years, but is nevertheless enabled, by reason of new professional or business skills or experiences acquired by him, to perform the duties of a full time job in a new field for compensation reasonably comparable with the amount of compensation formerly earned by him," he is not totally and permanently disabled within the contemplation of the ordinary total disability clause.

In construing a disability provision similar to the one involved in the instant case, this Court in *Dunlap v. Maryland Casualty Co.*, 203 S. C. 1, 25 S. E. (2d) 881, 884, 149 A. L. R. 1, said: "The clause 'engage in any occupation or employment for wage or profit' should not be construed in the sense of any kind of occupation or employment, however

insignificant or small the remuneration might be. We think the expressions 'any occupation' and 'any employment' should be considered to mean the usual employment of the particular person insured, or such other employment, if any, reasonably approximating the same livelihood, as the insured might fairly be expected to follow in view of his station, circumstances, training, aptitude and physical and mental capabilities." The Court further stated: "A policy of this kind cannot be held to be one of income insurance, guaranteeing the insured against depreciation of his income on account of any injury; yet, if an insured is rendered incapable of continuing in his former occupation, but is able to perform some other work, that work in our opinion must not only be an occupation or employment for which he is reasonably fitted, but must rationally approach the same livelihood and standard of living which he enjoyed prior to his injury."

To the same effect are *Blackwell v. Prudential Insurance Co. of America*, 206 S. C. 320, 34 S. E. (2d) 57, and *Goudelock v. Prudential Insurance Co. of America*, 219 S. C. 284, 65 S. E. (2d) 114.

We need not inquire whether after his left foot became diseased, insured was able to carry on the business of hosiery salesman in substantially his customary and usual manner. It appears to be conceded that he could not. As previously stated, no question is raised as to total disability prior to February, 1951. Our problem is whether, using the criterion stated in the *Moyle case*, insured is now able by reason of his experience "to perform the duties of a full time job in a new field for compensation reasonably comparable with the amount of compensation formerly earned by him," or, using the same test expressed somewhat differently in the *Dunlap case*, whether he is now engaged in an employment "for which he is reasonably fitted," and which rationally approaches "the same livelihood and standard of living which he enjoyed prior to his injury."

We shall first compare the earnings of the two occupations. As hosiery salesman, the maximum commissions received in any year amounted to $4,800.00. Insured's salary in his present employment is $4,200.00. We think as a matter of law that these earnings are reasonably comparable. It is argued, however, that an income of $4,800.00 in 1942 is the equivalent of around $6,500.00 or $7,000.00 in 1951 and that when this feature is taken into consideration, there has been quite a reduction in earning capacity. It is true that we held in the *Blackwell* and *Goudelock cases* that in determining the reduced earning capacity of an insured on account of his disability, his earnings in his new occupation or employment should be compared with those which, except for his disability, he would reasonably have earned during the same period of time. had he continued in his old occupation. But there is no evidence in the instant case showing what insured would have earned in 1951 had he continued as a hosiery salesman. The evidence along this line was directed solely to the decreased purchasing power of the dollar, as shown by the following testimony:

"Q. I'll ask you this, Mr. Adair. Has the price of food and clothing and all other articles, according to your knowledge, increased since 1942? A. Yes, sir, they have increased.

"Q. From your knowledge of the increase in prices and your knowledge of buying as compared to 1942, what would a salary of $4,800.00 approximate in 1951? A. It would be sixty-five hundred or seven thousand dollars.

"Q. Have you drawn anything like sixty-five or seven thousand dollars? A. No, sir."

In the *Blackwell case,* the insured was a textile worker and we took judicial notice of the progressive increase in the scale of wages during recent years. Goudelock was a government worker and it could be determined with reasonable certainty what his income would have been had he continued in his old occupation. There is no such stability in

the earnings of a person selling hosiery on a commission basis. Certainly with so many imponderables involved, we cannot assume that there would have been a progressive increase in insured's earnings as hosiery salesman.

The Insurance Company argues that in the comparison of earnings, there should be added to insured's salary of $4,-200.00, the sum of $4,000.00, representing his proportionate share of the net income of the corporation amounting to $12,000.00. There may be merit in his reply that this method of comparison would be unsound because the earnings of the corporation have not been distributed and, further, that it would be improper to consider as a part of his earnings a return on his capital investment. Be that as it may, however, for the purpose of this decision, we have assumed that the present earnings of insured consist solely of his salary.

There can be no doubt that the insured is fitted by training and experience for his present occupation. But it is vigorously asserted that he is not able to perform all the necessary duties of this position which, it is claimed, is not only of an executive nature but in a small rural county requires the ability to go into the country and sell cars, necessitating walking across plowed fields and climbing into barns to see prospective customers, bending over and examining underneath second-hand cars, and playing golf, hunting, and engaging in other sports to make contacts and promote good will, none of which, it is said, the insured can do. There is also testimony to the effect that by reason of his inability to discharge the foregoing functions, it was necessary to go to the added expense of employing a salesman at a salary of $65.00 per week. It is further claimed that he frequently suffers from an irritation of his left leg; but there is no showing of any appreciable loss of time from his work.

So far as the salary of the salesman is concerned, this is an expense borne by the corporation and not by the insured. Moreover, it appears that the person who previously had

this Chevrolet agency employed a salesman during the greater portion of the time. It is obvious that the principal duties of insured are of an executive nature. He is charged with the general management of the business. But assuming that, except for his handicap, he would go out in the country and sell automobiles, those acts which he claims he is unable to do are hardly substantial enough to seriously interfere with his work. He is able to drive an automobile and to walk without much difficulty on level ground. If the argument now advanced were carried to its logical conclusion, almost every person suffering under the handicap of insured could be classified as totally disabled, for it would be difficult to imagine any occupation in which the loss of a leg would not result in the inability to discharge some functions, even though they be of a minor nature. In passing on the question of total disability, consideration must be given to the business or profession of the claimant. What would totally disable or incapacitate one person might not seriously impair another.

It is argued that Hull, being a majority stockholder in the corporation, is in a position to discharge insured at any time, and if he did so, insured might be unable to secure other employment for which he was reasonably fitted and affording comparable compensation. But the only question before us is whether he is now totally disabled. We are not required to anticipate whether he may subsequently become so. It may not be amiss to add, however, that there is no evidence that Hull has indicated any dissatisfaction with insured's work or his ability to carry on his duties.

The instant case cannot be distinguished in principal from *Moyle v. Mutual Life Insurance Company of New York, supra,* 201 S. C. 146, 21 S. E. (2d) 561. There the insured, a 47 year old division sales manager for a large tobacco manufacturer, with a yearly income of approximately 4,-600.00, who had lost his right hand when a small child, suffered an injury to his remaining hand rendering him

unable to carry on the work in which he was engaged. He then studied law for four years, after which he worked for several years with various welfare organizations as an unsalaried helper, finally obtaining a position as executive director of the Columbia Community Chest at a salary of $3,600.00 a year, which position he held at the time of the trial. The insurance company, which had previously conceded total disability, contended that after obtaining this new employment, the insured was no longer totally and permanently disabled. This contention was sustained and the Court held, Mr. Justice Stukes dissenting, that there should have been a directed verdict for the insurance company.

We think the *Moyle case* presented a stronger showing of total disability than the instant case. Here the income from the new employment is only $600.00 less than that formerly earned, while in the *Moyle case* there was a difference of $1,000.00. Here the insured by reason of his past experience was fully qualified to discharge the duties of his new occupation, while in the *Moyle case* the insured, after his disabling injury, qualified himself for his new job through education and training over a period of several years, doubtless at considerable expense.

The case of *Goudelock v. Prudential Insurance Co. of America, supra,* 219 S. C. 284, 65 S. E. (2d) 114, so strongly relied on by insured, does not call for a different conclusion. Goudelock, while employed by the Veterans Employment Service, suffered a serious heart attack in October, 1946. In March, 1947, he resumed this occupation. His physical condition became progressively worse and he had to quit the following October. Several months later, against the advice of his physicians, who stated that any definite or strict routine would be prejudicial to his health and shorten his life, he secured employment as soliciting agent with an insurance company and was engaged in this work at the time of the trial. The evidence showed that his income as an insurance agent was only a little more

than half of that which he would have earned had he been able to continue in his old occupation. It further appeared that he was unable to carry on his insurance business on a full time basis. He could only devote three or four hours a day for about three and a half days a week to his work. It was necessary for him to rest in bed for several hours each afternoon. In short, Goudelock was a very sick man and should not have been working at all. The Court held that the issue of total disability was properly submitted to the jury. Clearly the facts in that case presented an entirely different situation from those now before us.

Judgment reversed and the case remanded for entry of judgment in favor of the Insurance Company in accordance with Rule 27.

BAKER, C. J., STUKES and TAYLOR, JJ., and BRUCE LITTLEJOHN, A. A. J., concur.

STUKES, Justice (concurring).

Being bound by the *Moyle case, supra,* in which I dissented in vain, I concur in the foregoing opinion in this case.