17042

JOSEPH MALLINGER, Respondent, v. NEW YORK LIFE
INSURANCE COMPANY, Appellant
(88 S. E. (2d) 578)

*Joseph L. Nettles, Esq.,* of Columbia, *for Appellant,*

*Messrs. Whaley & McCutchen,* of Columbia, *for Respond-
ent,*

July 27, 1955.

OXNER, Justice.

This is an action to recover disability benefits under two policies of insurance issued in April, 1930, by the New York Life Insurance Company to Joseph Mallinger, who was then about 32 years of age. The policies provided for insurance on his life in the aggregate amount of $15,000.00 and, under the disability clauses, for the waiver of premiums and payments of $150.00 a month in the event that he became totally and permanently disabled before age 60, and before the maturity of the policies. They matured as an endowment on April 1, 1950 and the face amounts were paid to the insured.

In May, 1932, or about two years after the issuance of the policies, insured claimed that he became totally and permanently disabled and filed claims for disability benefits, which the Company paid uninterruptedly from May, 1932, through July, 1951. It then refused to make further payments. The insured now seeks to recover disability benefits from August, 1951 to October, 1952, the date of the commencement of this action. In its answer the Company denied that the insured had been totally disabled since January, 1951, and alleged that on that date he assumed a gainful occupation. The Company further set up a counterclaim for

payments made from January through July, 1951, alleging that these payments were made without knowledge of the insured's state of health and the extent of his activities. The insured entered a general denial to this counterclaim.

The case was tried on March 12, 1954. At the conclusion of the testimony each side made a motion for a directed verdict. That of the Company was refused. The motion of the insured was granted and he was awarded judgment for $2,250.00, plus interest. The Company has appealed, contending that the question of total and permanent disability should have been submitted to the jury.

Respondent was born in Pittsburgh, Pennsylvania. His education did not extend beyond the fifth grade. When sixteen, he married and now has two children. Early in life he secured a job with a firm engaged in dismantling buildings, bridges, coal mines and machinery. Later he went into this business for himself and, with the exception of the year 1917 when he was employed as a policeman by the City of Pittsburgh, was continuously so engaged until May, 1932. During that month he claims that while at work, he accidentally inhaled cyanide potassium fumes. He was immediately taken to a hospital in Pittsburgh, where he remained until the following November. The physicians there diagnosed his illness as anxiety neurosis and also found that his heart was damaged. Since then he has been more or less constantly under the care and attention of a number of physicians. He claims to have broken his back in 1946, necessitating wearing a brace, and to also have developed arthritis of the spine. According to the medical testimony, he is now suffering from anxiety neurosis, heart disease, arthritis and nephritis. The physicians who attended him were unanimously of opinion that he is now, and has been since May, 1932, unable to engage in any gainful occupation.

After leaving the hospital in 1932, respondent spent considerable time at Cambridge Springs, Pennsylvania, a resort community about one hundred miles from Pittsburgh. His

family continued to reside in Pittsburgh where his wife carried on the dismantling business until 1946.

Beginning about 1936, respondent went to Florida nearly every winter to escape the severity of the Pennsylvania climate. In recent years he has spent most of his time in Florida. He testified that during 1950, he obtained employment at several places but after a few days had to quit because of his inability to do the work. It is undisputed, however, that he was employed as a policeman by the town of Surfside, Florida, from December 31, 1950, to August 7, 1951, at a salary of $275.00 a month. The only time lost during this period was two weeks in March, 1951, when he was treated in a hospital for his injured back.

Briefly, the situation is this: The attending physicians, some of whom are outstanding specialists in their fields and others general practitioners, expressed the opinion that since May, 1932, respondent has been physically unable to engage in any gainful occupation. To this is to be added the fact that he did no work until the latter part of 1950. But from December 31, 1950, to August 7, 1951, he was employed as a full time policeman and was paid the regular salary.

The opinion of the physicians is not conclusive as to total and permanent disability. *DuRant v. Aetna Life Insurance Co.*, 166 S. C. 367, 164 S. E. 881; *Stewart v. Pioneer Pyramid Life Insurance Co.*, 177 S. C. 132, 180 S. E. 889; *Hickman v. Aetna Life Insurance Co.*, 166 S. C. 316, 164 S. E. 878; *Kizer v. Sovereign Camp, W. O. W.*, 192 S. C. 465, 7 S. E (2d) 220. In fact, such medical testimony "will not be allowed to override the positive evidence that the person claiming total and permanent disability was, at the time covered by the theoretical testimony of the doctor, actually doing his accustomed work in substantially his accustomed way." *Etters v. Equitable Life Assurance Society*, 175 S. C. 142, 178 S. E. 610, 611.

There is the further consideration that the diagnosis of anxiety neurosis, one of the principal causes given by the

physicians for respondent's alleged disability, was necessarily based on subjective symptoms. Another major disabling cause, according to the medical testimony, was heart disease. Although all the doctors were of opinion that respondent had a "bad heart", an outstanding specialist in this field, who examined him just prior to the trial, conceded on cross examination that the electrocardiogram made at that time disclosed nothing abnormal.

Numerous witnesses for respondent, some of whom worked on the police force with him at Surfside, Florida, testified that he was unable to perform all the duties required of a policeman; that he suffered intense pain, and frequently had to take time out to rest. In reply, appellant offered the testimony of a former police sergeant who said that respondent performed his duties satisfactorily. There was no complaint of his work in the testimony of the Chief of Police. The question of whether respondent was able to do substantially all the duties required of a policeman was one for determination by the jury.

Finally, it is argued that assuming he was able to carry on the duties of a policeman in the usual and customary manner, the income received did not rationally approach the same livelihood and standard of living which he enjoyed in the dismantling business.

According to respondent's testimony, prior to becoming disabled in May, 1932, he had developed a large and lucrative business, employing thirteen people, from which he received an income of around $15,000.00 a year. As heretofore stated, the business was operated by his wife from May, 1932, until 1946, but there is no testimony as to what income was received during this period.

We do not reach the question of comparable earnings unless respondent is totally disabled from engaging in his former occupation. *Blackwell v. Prudential Insurance Co.*, 206 S. C. 320, 34 S. E. (2d) 57. Under the evidence, we think this was a question for the jury. As-

suming, however, that he cannot do so, we cannot say as a matter of law that his income as a policeman was not reasonably comparable to that which he would have earned had he continued in the dismantling business. The record is silent as to the profits now made by those engaged in this line of work. The income which respondent earned prior to 1932 may have been due in part to peculiar circumstances in the scrap metal business which may or may not now exist. It will be noted that respondent, due to economic conditions, had to get out of the dismantling business in 1917 and secure a job as a policeman. It was for the jury to say whether the remuneration which he received as a policeman at Surfside, Florida, rationally approached the amount, necessarily uncertain, which he would have made during the same period in his former occupation.

While there is abundant testimony warranting the conclusion that respondent is now and has been continuously since May, 1932, totally disabled from engaging in any gainful occupation, we cannot say as a matter of law, viewing the testimony in the light most favorable to appellant, that he was totally and permanently disabled during the period for which benefits are now sought.

Judgment reversed and case remanded for new trial.

STUKES, TAYLOR and LEGGE, JJ., and JOSEPH R. Moss, Acting Associate Judge, concur.